# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1438

_____

United States of America,      *
     *
        Plaintiff - Appellee,      *
     *     Appeal from the United States
    v.      *     District Court for the District
     *     of North Dakota.
Yvette LaFloe Falcon,      *
     *
        Defendant - Appellant.      *

_____

Submitted: October 17, 2006
Filed: February 14, 2007

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Yvette LaFloe Falcon was convicted by a jury of one count of conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371 and two counts of embezzlement or misapplication of funds from an Indian tribal organization in violation of 18 U.S.C. § 1163. The district court[1] sentenced Falcon to eighteen months' imprisonment. Falcon appeals, alleging insufficient evidence and plain error in the jury instructions. We affirm.

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

I.  Background

Falcon is an enrolled member of the Turtle Mountain Band of Chippewa Indians ("the Tribe") in North Dakota.  In 1994, she was elected chief clerk of the Tribe's court.  She was re-elected in two subsequent elections and held the post of chief clerk during all times relevant to the present offenses.  The conspiracy and embezzlement charges in this case arose from the use of travel funds obtained and disbursed under Falcon's signature or under the signature of her convicted co-conspirator Sharon Malaterre.  The travel at issue was allegedly undertaken for the purpose of training related to tribal business.  During the times relevant to the present offenses, Malaterre served first as an associate judge and later as chief judge of the Tribe's court.

Under the Tribe's policy regarding business travel, travelers were required to submit a signed travel authorization request and voucher request to a supervisor or department head who would approve, sign, and forward the requests to a member of the executive committee for a final signature and disbursement of funds.  The Tribe considered Falcon and Malaterre to be supervisors or department heads.  Members of the executive committee included officers such as the Tribe's chairman, vice-chairman, etc. Travelers could request and receive up to eighty percent of their anticipated travel expenses in advance and submit receipts upon the completion of travel to obtain the lesser of the remaining twenty percent or the actual cost of travel.

In 2001, the Tribe's chairman instructed Falcon and other department heads and project administrators that his signature on requisitions served only as acknowledgment that all other necessary signatures were present.  He stated it was the responsibility of department heads or project administrators to make sure that requested expenditures were permissible under the terms of relevant grants or funding sources, and he would interpret their signatures as representations that expenditures were appropriate.  The Tribe's chairman testified that the large number of grants and

other funding sources and the large number of departments or line items in the Tribe's overall budget made it impractical for the executive committee to track each source and verify the propriety of every request received from a department head. Accordingly, the Tribe's chairman testified that it was necessary, in general, for the executive committee and the finance office to rely upon representations by the department heads and grant administrators concerning the propriety of expenditures under the various grants.

The travel funds at issue in this case relate to travel for two separate seminars or conferences. The first travel occurred in 1999, and the destination was a conference in Jacksonville, Florida. The persons who received travel funds for the trip from North Dakota to Florida included Falcon, Malaterre, Delmark Langen (a Bureau of Indian Affairs law enforcement officer), and Marilyn Davis (an employee of the Tribe). These persons had planned to fly to Florida, and Falcon had made flight reservations for the group. Days before leaving, however, Falcon determined that flying was not possible. She then approached Langen about using a BIA van for the trip. Langen obtained a nine-passenger BIA van. The travelers also used a smaller van owned by a different judge on the Tribe's court.

Falcon, Malaterre, and Langen requested and received eighty percent of their anticipated expenses in advance. Malaterre received $970 and Falcon and Langen each received over $1934. The amounts advanced to Malaterre and Langen included anticipated mileage for the trip at $0.31 per mile. Falcon proposed and approved payment of $0.31 per mile for Langen to drive the BIA van to Florida. This reimbursement rate was the rate usually paid to persons for driving their own vehicles during reimbursable travel, not a rate applied to the use of government-owned vehicles.

Langen, Malaterre, Falcon, and Falcon's son traveled together to Florida in the BIA van. Davis, her husband, and her husband's daughter traveled in the private van.

-3-

The employees' family members went to Disney World while in Florida. Although the government strongly inferred at trial that the purpose for taking two vans was to permit the family members to travel to Disney World for free, such a finding was not necessary to support the jury's verdict.

During the trip, Falcon told Langen that Malaterre had run out of money, and Langen gave a portion of his mileage money to Malaterre. Following the trip, Falcon submitted trip reports and receipts for the travelers. These submissions included receipts for hotel stays in Eau Claire, Wisconsin, and Ashley, Illinois. It was shown at trial that these hotel receipts were false—Langen and Malaterre denied staying in either of the hotels, and, in fact, the hotels named on the receipts did not exist. Further, the fabricated receipts were poorly made (for example, Eau Claire was misspelled on the false receipt). Falcon claimed that Malaterre acted alone and submitted the false receipts. Malaterre and Langen testified, however, that Falcon submitted the receipts. Also, Falcon had signed the relevant trip reports.

The second instance of travel at issue in this case was a trip to Las Vegas for a training conference. Funding for the Las Vegas trip, approved by Falcon, was taken from a specific federal grant. The federal grant included a limited allocation of funds for travel. This allocation included money for an attorney to travel to Washington, D.C., and for the project administrator to travel once to Rapid City, South Dakota, and once to Bismark, North Dakota. It contained no money for travel to Las Vegas. According to grant documents and testimony from multiple witnesses, Falcon was the administrator for the grant and was responsible for creating the budget that was included in the grant. Notwithstanding Falcon's knowledge of and responsibility for the grant, she approved travel for multiple members of the Tribe to a conference in Las Vegas. The total amount of travel funds requested and paid out under vouchers approved by Falcon for the Las Vegas trip exceeded the total travel budget of the grant by thousands of dollars.

In Las Vegas, multiple Tribe members spent their travel advances at the gaming tables prior to the conference. The money lost due to gambling included the travel advances intended to pay the conference fee or tuition. Falcon talked to the conference director and obtained permission to pay the required fee at a later date. Ultimately, only one of the travelers paid the conference fee. After the conference, in her submission for the unpaid twenty percent of her requested travel funds, Falcon submitted a photocopy of a check for the conference fee and a photocopy of an envelope that she purportedly used to mail the check to the conference organizers. At trial, it was revealed that the check was never received by the conference organizers and that the check had never been cashed. Taken in a light most favorable to the verdict, we must assume that the jury permissibly concluded that Falcon never sent the check to pay for the conference tuition and fabricated the evidence she submitted with her claim for reimbursement.

The government charged Falcon and Malaterre with conspiracy and embezzlement. Malaterre pleaded guilty to conspiring to defraud the United States in violation of 18 U.S.C. § 371 and testified against Falcon. The jury received Malaterre's plea agreement as evidence in Falcon's case.

Falcon defended herself at trial by arguing that the Tribe's executive committee, comptroller, and finance office had oversight duties regarding the travel expenditures such that she was free to sign her own and other persons' requests and vouchers without regard to the propriety of the travel. Numerous other witnesses, including the Tribe's chairman and the comptroller, rebutted these claims. Further, Falcon at no time presented a reasoned explanation for the submission of false hotel receipts. She did argue that Malaterre acted alone regarding the false hotel receipts, but other testimony and evidence rebutted her claim. Finally, she failed to present any explanation of why Langen received the personal vehicle per-mile rate for driving the BIA's van to Florida.

Ultimately, the jury rejected Falcon's characterization of her role as a non-supervisory, non-responsible party and accepted the testimony of the tribal officials who had explained the apportionment of responsibilities in the Tribe's process for approving travel.

II.    Discussion

A.    Jury Instructions

Falcon raises two challenges concerning the instructions on the substantive counts of embezzlement.  She first argues that the district court erred by not instructing the jury as to the meaning of the word "willfully."  She also argues that the district court erred by submitting an instruction regarding "deliberate indifference" even though the embezzlement statute required proof that she acted willfully or knowingly.

Falcon did not raise these challenges below, so our review is for plain error. United States v. Olano, 507 U.S. 725, 731 (1993).  Plain error only exists if (1) there was an error, (2) the error was plain, (3) the error affected Falcon's substantial rights, and (4) a failure to grant relief would "seriously affect the fairness, integrity, or public reputation of judicial proceedings."  Johnson v. United States, 520 U.S. 461, 466-67 (1997) (internal quotations omitted).  An error is only plain if it is a clear violation of existing law.  Olano, 507 U.S. at 734.  An erroneous jury instruction only affects substantial rights if "'the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  United States v. Smith, 450 F.3d 856, 859 (8th Cir. 2006) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)) .

Falcon's first challenge relates to her interpretation of the term "willfully" as used in 18 U.S.C. § 1163.  That section provides:

Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization . . . .

Shall be fined under this title, or imprisoned not more than five years, or both; but if the value of such property does not exceed the sum of $1,000, he shall be fined under this title, or imprisoned not more than one year, or both.

The district court instructed the jury that one element of the offense required proof that "the Defendant knowingly and willfully permitted to be misapplied assets, that is, travel funds." The district court defined the terms "embezzle," "conversion," and "misapply." The separate instruction that set forth the definition for the term "misapply" stated:

To "misapply" means to use the funds or property of the Turtle Mountain Band of Chippewa Indians, *knowing that such use is unauthorized, or unjustifiable or wrongful*. Misapplication includes the wrongful taking or use of the money or property of the Turtle Mountain Band of Chippewa Indians, by its agent for his or her own benefit, the use or benefit of some other person, or an unauthorized purpose, even if such use benefitted the Turtle Mountain Band of Chippewa Indians.

(Emphasis added).

Falcon asserts that the term willfully in the context of a violation of 18 U.S.C. § 1163 requires proof not only that a defendant intentionally or purposely permitted the misapplication of funds, but that a defendant knew she was violating the law and acted with a culpable state of mind, i.e., acted with a specific intent to violate the law. Even if we were to presume that Falcon correctly describes the meaning of the term "willfully" under § 1163, her argument fails. The definition that the district court gave to the jury for the term "misapply" incorporated precisely the kind of specific

intent definition that Falcon advocates. Further, the term "willfully" only appears in § 1163 in reference to the acts of misapplying or permitting to be misapplied. Accordingly, under the instructions used in this case, the jury could not have found that Falcon acted willfully without finding the *mens rea* that Falcon believes applicable to § 1163.

Falcon's second, related argument is that the district court erred when it gave the jury a "deliberate indifference" instruction. According to Falcon, such an instruction permitted the jury to convict based on a finding merely of constructive knowledge and permitted a conviction where the jury may have only found negligence or carelessness. This argument misconstrues the nature of the deliberate indifference instruction and ignores the fact that the district court expressly cautioned against finding guilt based on negligence. The instruction given by the district court was as follows:

> You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that travel funds were being misapplied and that she deliberately avoided learning the truth. The element of knowledge may be inferred if the defendant deliberately closed her eyes to what would have otherwise been obvious to her.

> You may not find that the defendant acted knowingly, however, if you find that the defendant was simply careless. A showing of negligence, mistake, or carelessness is not sufficient to support a finding of knowledge.

This is not, as argued by Falcon, a negligence, constructive knowledge, or "should have known" instruction. As we and other courts previously have recognized, a deliberate indifference instruction is not the same as a constructive knowledge instruction. See United States v. Parker, 364 F.3d 934, 947 n.3 (8th Cir. 2004) (holding a deliberate indifference instruction adequate where the trial court admonished the jury against finding the requisite knowledge based merely on the

defendant's "negligence, mistake, or carelessness"); United States v. Crabtree, 979 F.2d 1261, 1269-70 (7th Cir. 1992) (rejecting the argument that a deliberate indifference instruction permitted conviction "for negligence without proof of intent" and stating that a deliberate indifference instruction "informs the jury that guilty knowledge can be inferred from a combination of suspicion and deliberate indifference"). A deliberate indifference instruction is used to inform the jury that a defendant's actions, or failures to act, combined with other circumstances may suffice to prove that a defendant had actual knowledge of a fact. Parker, 364 F.3d at 947. Here, as in Parker, there was an express admonition to preclude the jury's finding of knowledge based merely on a negligence standard. The deliberate indifference instruction was appropriate because Falcon had argued she did not act willfully or with the requisite knowledge. Also, her version of the facts laid blame at the feet of Malaterre but indicated Falcon may have signed vouchers and acted with willful blindness of Malaterre's actions.

Further, we note that even if Falcon's challenges to the instructions had merit, we would have to conclude that the alleged errors did not affect Falcon's substantial rights. The evidence taken in a light most favorable to the jury's verdict demonstrated that Falcon fabricated and submitted hotel receipts for hotel stays that never occurred. Further, it showed that Tribe members used their travel funds to gamble, and Falcon falsely claimed to have paid conference fees in an effort to hide the misuse of funds. Finally, the evidence showed that Falcon initiated inappropriate claims for mileage even though the mileage arose from the use of a government vehicle. Under any reasonable definition of the term willfully, and without resort to a theory of deliberate indifference, this evidence suffices to establish a willful misapplication of Tribal funds.

B. Sufficiency of the Evidence

Falcon also challenges her conviction based on the sufficiency of the evidence. "We will uphold the conviction 'as long as there is an interpretation of the evidence

that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.'" United States v. Johnson, 470 F.3d 1234, 1237 (8th Cir. 2006) (quoting United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006)).

Falcon's challenge rests largely on her own contested testimony, which the jury clearly rejected. For example, Falcon stated that Langen approached her about using the BIA van. Langen denied this claim and testified that Falcon requested that he obtain the BIA van. Falcon testified that the Tribe's officers, rather than department heads like herself, were responsible for approving travel and ensuring that travel expenditures were authorized under the relevant funding sources. The Tribe's officers, however, made clear in their testimony that department heads were responsible for ensuring the propriety of travel. Falcon testified that Malaterre submitted the voucher requests and false hotel receipts for all employees following the Florida trip, even though the other employees stated that Falcon received and submitted their receipts, and even though Falcon signed-off on the submission of the false hotel receipts.

We will not disturb the jury's credibility assessments on appeal. United States v. Jansen, 470 F.3d 762, 765 (8th Cir. 2006) ("[C]redibility determinations are virtually unreviewable on appeal.") (internal quotations omitted). As such, we cannot accept Falcon's credibility-based challenge and must rely on the jury's assessment of the competing testimony. We therefore find that substantial evidence supports the verdict.

The judgment of the district court is affirmed.

_____