# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1158

_____

United States of America,      *
     *
        Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    District of South Dakota.
Sosaeoleisah Refert, also known as      *
Sosaeoleisah C. Bluespruce, also      *
known as Leisah Bluespruce, also      *
known as Lisa Refert,      *
     *
        Appellant.      *

_____

Submitted: November 13, 2007
Filed: March 13, 2008

_____

Before RILEY, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Following a jury trial, Lisa Refert was found guilty on one count of health care fraud, in violation of 18 U.S.C. § 1347, and four counts of making a false claim against the United States, in violation of 18 U.S.C. § 287. Refert falsely represented herself to be of Native American descent in order to obtain free medical services. Refert was sentenced to three months in custody on each count, to run concurrently, and she was ordered to serve three years of supervised release on each count, two counts to run consecutively and the remainder to run concurrently. Refert was also

ordered to pay restitution. On appeal Refert argues that (1) the jury instructions were in error; (2) two of her false claims counts lacked sufficient evidentiary support; (3) the district court erred in including costs of services provided during emergency room visits in the restitution order; and (4) the district court erred in ordering two of the supervised release terms to be served consecutively. We affirm in part and reverse in part.

## I. *Background*

Lisa Refert[1] is the adopted daughter of Richard and Edna Refert. She was born in 1962 in Long Branch, New Jersey. According to research done by an investigator for the Department of Health and Human Services (DHHS), Refert's biological mother is Caucasian but her biological father could not be identified. Refert claims that her biological father was Chester Bluespruce, a Native American, who she says died in 1993.

Refert claims to remember very little of her childhood due to repressed memories resulting from abuse. Refert graduated from a New Jersey high school and then attended Rutgers University. In 1991, Refert graduated from Seton Hall Law School, after which she clerked for a New Jersey state judge and worked at various New Jersey law firms.

In 1997 Refert applied for the position of Cheyenne Reservation Associate Tribal Judge. In her application, Refert stated that she had attended an elementary school near the Northern Cheyenne Reservation in Montana. She also represented that she had attended a Montana school that enrolled 95% Native American students, that she had spent a substantial portion of her life on a reservation, that she was born in

---

[1]Lisa Refert claims that she has legally changed her name to Sosaeoleisah Bluespruce Refert. She is also referred to as Sosaeoleisah C. Refert, Sosaeoleisah C. Bluespruce, Leisah Bluespruce, and Lisa Refert. The district court found that Refert has not properly changed her name.

Sheridan, Wyoming, and that she was affiliated with the Northern Cheyenne Tribe in Montana. Refert was not selected for the position, but she was hired a few months later as Chief Tribal Judge by the Cheyenne River Tribe. In February 1998, Refert moved to Eagle Butte, South Dakota and began her work. In November 1999, Refert was removed from that position and began practicing law mostly in the tribal court.

In November 2001, the Cheyenne River Tribal Council addressed whether Refert was actually enrolled as a member of the Northern Cheyenne Tribe. At this meeting, Refert claimed that she was Native American and that she had been enrolled in the Northern Cheyenne Tribe since birth. She stated that her personnel file contained verification of this information, as did her Indian Health Services (IHS) file. Her personnel file, however, did not contain such documentation—neither did her IHS file. Refert later claimed that she lost her copies of the documents proving she was a Tribe member when the roof blew off her mobile home.

IHS, an agency within the DHHS, provides limited free medical services to eligible Native Americans. During Refert's time in South Dakota, between 1998 and 2003, she received free health services from IHS based on her assertion that she was eligible as a member of the Northern Cheyenne Tribe and was three-quarters Native American. During the investigation into her eligibility, Refert represented that she had documents establishing her tribal enrollment but she never gave those documents to investigators. A DHHS investigation uncovered no proof that Refert was enrolled in any Native American tribe.

In October 2003, IHS informed Refert by letter that, based upon its information, Refert had never provided the documentation necessary to establish her eligibility for services. The letter asked Refert to provide the appropriate documentation within 60 days or face termination of IHS services. Refert never submitted the required documentation.

On August 17, 2005, an indictment was filed charging Refert with one count of health care fraud, in violation of 18 U.S.C. § 1347, and four counts of making a false claim against the United States, in violation of 18 U.S.C. § 287. Although Refert received free medical services on numerous occasions, the indictment singled out four specific visits: March, 24, 2002 (an emergency room visit); October 15, 2002 (an outpatient pharmacy visit); July 27, 2003 (an emergency room visit); August 25, 2003 (an outpatient pharmacy visit).

During Refert's two day jury trial, the government called Nancy Davis, the Deputy Area Director for IHS, to testify. The government introduced a briefing sheet that IHS shares with patients to explain IHS eligibility. Davis testified that a patient must be a member of a federally recognized tribe or must prove descendancy of a member of a federally recognized tribe to be eligible for free IHS services. Davis testified that each tribe has the authority to create its own membership criteria and that membership is typically based on blood quantum. Davis also testified that because IHS is only funded at fifty percent of its need, the burden is on the patient to prove their eligibility. Davis, however, acknowledged that in the past, some individuals who have not proven eligibility nonetheless received free care over a long period of time. Davis also explained that IHS will treat any person for genuine emergencies, even if the individual is ineligible for IHS. The cost of the services is then billed to the person or their insurance company.

With respect to Refert specifically, Davis testified that Refert filled out a standard new patient sheet on her first visit to IHS. On that document, Refert wrote that she was born in Sheridan, Wyoming, was enrolled in the Northern Cheyenne Tribe, and had three-quarters Native American blood. On another similar form, Refert wrote down a different birth place, Lame Deer, Wyoming, and added that her mother was born in Onondaga, New York. Davis testified that Refert never produced the documents necessary to show that she was eligible to receive IHS services.

-4-

On cross-examination Refert's attorney asked Davis if IHS used the IHS briefing sheet, which gave a five-page overview of IHS services and eligibility, to determine eligibility. Davis responded that the briefing sheet was a resource created to share with people that was easier to understand than the actual regulation. Davis reiterated throughout her testimony that the short explanatory document was not the entire IHS regulation.

Refert's attorney entered the primary IHS regulation into evidence and questioned Davis about following the language in the regulation:

> Generally, an individual may be regarded as within the scope of the Indian health and medical service program if he/she is regarded as an Indian by the community in which he/she lives as evidenced by such factors as tribal membership, enrollment, residence on tax-exempt land, ownership of restricted property, active participation in tribal affairs, or other relevant factors in keeping with general Bureau of Indian Affairs practices in the jurisdiction.

42 C.F.R. § 136.12(a)(2).

Davis testified that a tribe may choose to authorize non-Native American access to IHS services but it is customary for a resolution to be presented to the Tribal Council in order to officially recognize the individual. Davis testified that the specific tribe may decide if an individual is "regarded as an Indian by the community" and therefore should be eligible for IHS. Davis testified that working in the community and associating with its members does not create eligibility for IHS services in the absence of tribal action.

In her defense, Refert testified that she submitted the appropriate eligibility documents with her IHS application for benefits but that those documents could not be found because of a political vendetta or conspiracy against her. When asked by her

attorney if she was a member of the Native American community she answered that she was. Refert also testified that she knew she had to be eligible to receive treatment from IHS.

The district court selected Eighth Circuit Pattern Jury Instruction 6.18.287 to explain the elements of the false claim charges in Instructions 10 through 14 given to the jury. Instruction 3 and 4 further explained the government's burden of proof. Instruction 9 stated the elements of health care fraud.

The jury found Refert guilty on all counts. The district court sentenced Refert to serve three months in custody on each count to run concurrently; ordered her to serve three years of supervised release on each count, with two counts running consecutively; and, ordered Refert to make restitution in the amount of $8,689.45.

## II. *Discussion*

On appeal, Refert argues that (1) the court erred in instructing the jury; (2) insufficient evidence supports two of her false claim counts; (3) the court erred in including costs of services provided during emergency room visits in the restitution order; and (4) the court erred in ordering two of the supervised release terms to be served consecutively.

## A. *Jury Instructions*

Refert first argues that the jury instructions were inadequate because they lacked an instruction on the law of IHS eligibility. Refert claims this error seriously affected the fairness of the proceeding and necessitates a new trial. Because Refert did not challenge the jury instructions below we review for plain error. *United States v. Falcon*, 477 F.3d 573, 577 (8th Cir. 2007). "Plain error only exists if (1) there was an error, (2) the error was plain, (3) the error affected [Refert's] substantial rights, and (4) a failure to grant relief would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id*. (internal citation and quotations omitted).

Refert argues, for the first time on appeal, that the jury should have been instructed that under the IHS regulations an individual may be considered eligible for free IHS health care if they are "regarded as an Indian by the community." She relies on the following IHS regulation:

> Generally, an individual may be regarded as within the scope of the Indian health and medical service program if he/she is regarded as an Indian by the community in which he/she lives as evidenced by such factors as tribal membership, enrollment, residence on tax-exempt land, ownership of restricted property, active participation in tribal affairs, or other relevant factors in keeping with general Bureau of Indian Affairs practices in the jurisdiction.

42 C.F.R. § 136.12(a)

Refert claims that the government unfairly focused on blood quantum and family membership as bases for eligibility. She argues that the government's entry of the IHS eligibility briefing sheet into evidence may have led the jury to believe blood quantum and heredity were the only bases for IHS eligibility. The record below, however, reveals that the jury heard testimony on all bases of IHS eligibility—Davis was directly examined and cross-examined on the subject, and the entire regulation was admitted into evidence. Additionally, Refert did not place adequate evidence in the record that Refert was "regarded as an Indian by the community." We hold that the absence of a jury instruction on "regarded as an Indian by the community" was not plain error. *See United States v. Youngman*, 481 F.3d 1015, 1019 (8th Cir. 2007) ("Jury instructions are adequate if, taken as a whole, they adequately advise the jury of the essential elements of the offense charged and the burden of proof required of the government.") (internal citation and quotations omitted).

On the fraudulent claims counts, the district court used Eighth Circuit Pattern Jury Instruction 6.18.287 to explain the elements of the false claim charges in Instructions 10 through 14. The elements of the 18 U.S.C. § 287 counts were listed as:

> 1. On or about [_____], the defendant made or presented to the United States Department of Health and Human Services, Indian Health Service, a claim in the form of payment for health care benefits, items, or services, upon and against the Department of Health and Human Services, Indian Health Service, a department and agency of the United States.
> 2. The claim was false, fictitious, or fraudulent in that the defendant knew she was not eligible to receive health care benefits, items, or services paid for by Indian Health Services.
> 3. The defendant knew the claim was false, fictitious, or fraudulent.
> 4. The false, fictitious, or fraudulent claim was material to the Department of Health and Human Services, Indian Health Service.
> For you to find the defendant guilty of the crime charged in Count [] of the indictment, the government must prove all of these essential elements beyond a reasonable doubt. Otherwise, you must find the defendant not guilty of this crime.

This instruction advised the jury of the essential elements of the offense as stated in the relevant statute:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

18 U.S.C. § 287.

Jury Instruction 9 explained the elements of the health care fraud count:

The crime of health care fraud, as charged in Count I of the indictment, has two essential elements, which are: (1) The defendant knowingly and willfully executed, or attempted to execute, a scheme or artifice (a) to defraud a health care benefit program; or (b) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money, property or services owned by, or under the custody or control of, any health care benefit program, (2) In connection with the delivery of or payment for health care benefits, items or services. . . .

These elements match our description of the elements of health care fraud:

to convict [defendant] of health care fraud, the government had to prove beyond a reasonable doubt that he knowingly and willfully executed, or attempted to execute: a scheme or artifice--(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services.

*United States v. Boesen*, 491 F.3d 852, 856 (8th Cir. 2007) (internal citation omitted).

The government's burden of proof was also adequately explained in the jury instructions. Because the jury instructions, taken as a whole, adequately advised the jury of the essential elements of health care fraud, the elements of the crime of making a false claim against the United States, and the government's burden of proof requirement, we conclude that the instructions do not constitute plain error. *Youngman*, 481 F.3d at 1019.

B. *Sufficiency of the Evidence*

Refert next argues that her false claim convictions on Counts II and IV involving visits to the emergency room should be reversed due to insufficient evidence. In essence, she argues that those claims could not be fraudulent because the hospital was required to treat her regardless of her eligibility. Because Refert has not raised this issue before or preserved this issue for appeal, we review for plain error. *United States v. Selwyn*, 398 F.3d 1064, 1066 (8th Cir. 2005). "We review the facts in the light most favorable to the verdict, and will resolve conflicts in favor of the verdict; we will sustain the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *Id.*

Count two of Refert's indictment was based on a March 24, 2002, visit to the emergency room for a headache—Refert was given a prescription and discharged ten minutes later. Count four was based on a July 27, 2003, visit to the emergency room in which Refert sought treatment for cold-like symptoms and stated that she needed an inhaler, and she was diagnosed as having bronchitis. For both visits, the jury found Refert guilty of making a false claim against the United States by receiving free care from IHS while ineligible. Refert argues that the convictions for these visits should be reversed because IHS is required to treat even ineligible individuals on an emergency basis. The relevant regulation states:

> (a) In case of an emergency, as an act of humanity, individuals not eligible under § 136.12 may be provided temporary care and treatment in Service facilities.
> (b) Charging ineligible individuals. Where the Service Unit Director determines that an ineligible individual is able to defray the cost of care and treatment, the individual shall be charged. . . .

42 C.F.R. § 136.14.

Although the hospital was required, as an act of humanity, to treat non-Native Americans in the event of an emergency, the regulation clearly states that those emergency services are not free. *Id.* A reasonable jury could find that Refert made a false claim during these two emergency room visits because the hospital provided free services to Refert based on her representations that she was an enrolled tribal member with three-quarters Native American blood. A reasonable jury could find that Refert made a false claim because she did not represent to IHS that she was an ineligible person seeking emergency services, instead she represented that she was eligible for free services. The record shows that Refert never presented the documentation necessary to prove she was eligible for IHS services, yet she received free services during the emergency room visits addressed in Counts II and IV. Sufficient evidence exists that could lead a reasonable-minded jury to find Refert guilty of making false claims during the emergency room visits at issue. Therefore, we sustain the verdict.

## C. *Restitution*

Third, Refert argues that costs from the emergency room visits in Counts II and IV should be removed from her restitution order because she claims that the hospital was required to provide emergency care to her regardless of her eligibility. Because Refert did not challenge this restitution order previously, we review for plain error. *United States v. Piggie*, 303 F.3d 923, 928 (8th Cir. 2002).

Government agencies that are victims of offenses involving fraud and deceit are entitled to restitution under 18 U.S.C. § 3663A(a)(1), the Mandatory Victim Restitution Act. *United States v. Senty-Haugen*, 449 F.3d 862, 865 (8th Cir. 2006). A district court does not plainly err when it includes losses caused by the specific conduct that is the basis for the offense of the conviction in the restitution order, as opposed to incidental or consequential damages. *Piggie*, 303 F.3d at 928. As explained above, although IHS has a duty to treat even an ineligible individual in an emergency, ineligible individuals are not entitled to free emergency care. Nor are they entitled to care in non-emergency situations. Therefore, because Refert obtained free

-11-

emergency care services based on her false representations made to IHS, the district court did not plainly err in ordering restitution for the costs incurred by the government for those visits.

## D. *Supervised Release*

Finally, Refert argues that the portion of her sentence that requires her to serve two of her supervised release terms consecutively should be reversed under Eighth Circuit precedent. Because Refert neither objected to this portion of the sentence at the sentencing hearing nor filed a motion requesting the sentence be corrected, we review for plain error. *United States v. Ristine*, 335 F.3d 692, 694 (8th Cir. 2003). The government concedes that this portion of the district court's sentence is plain error.

In *United States v. Gullickson* we held that it was impermissible to sentence a defendant to consecutive terms of supervised release under 18 U.S.C. § 3624(e) which states that "The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject. . . ." 982 F.2d 1231, 1235 (8th Cir. 1993); 18 U.S.C. § 3624(e). We have held that 18 U.S.C. § 3624(e) "unambiguously states that terms of supervised release on multiple convictions are to run concurrently. We are of course bound to follow the plain language of the statute." *Gullickson,* 982 F.2d at 1236. Therefore, we conclude that the district court plainly erred in sentencing Refert to consecutive supervised release terms.

## III. *Conclusion*

Accordingly, we affirm Refert's conviction on all counts and affirm the restitution order of the district court. We reverse the district court's imposition of consecutive terms of supervised release and remand for resentencing consistent with this opinion.

_____