# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3255
_____

United States of America

*Plaintiff - Appellee*

v.

Tommy Collier

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: April 9, 2024
Filed: September 6, 2024
_____

Before SMITH, WOLLMAN, and GRASZ, Circuit Judges.
_____

SMITH, Circuit Judge.

A jury found Tommy Collier guilty of unlawfully possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841. On appeal, Collier raises several issues. On all issues, we affirm the judgment of the district court.[1]

---

[1]The Honorable D.P. Marshall Jr., then Chief Judge, now United States District Judge for the Eastern District of Arkansas.

## I. *Background*

While patrolling Interstate 40 in Lonoke County, Arkansas, State Police Corporal Travis May saw a motorist drift into the shoulder. He initiated a traffic stop. May walked up to the car, greeted the motorist, and asked if he was "doing okay." Gov't Ex. 2, at 1:44. May noticed that the motorist's "hands were shaking pretty uncontrollably" and that the car interior had a "lived-in look" with "lots of trash" and "signs of hard travel." R. Doc. 125, at 34. The motorist, Collier, was a resident of Greenville, Mississippi, and he was driving a car rented in Las Vegas, Nevada, with a Utah license plate. May asked Collier about his travel plans. Collier said that he drove from Mississippi to Little Rock, Arkansas, to shop for tires. Collier's shaking hands, disorderly car interior, and unusual itinerary aroused May's suspicion.

May believed further inquiry was warranted. He asked Collier if he had any weapons or drugs in the car. Collier replied that he did not. May took Collier's driver's license back to the patrol vehicle. He ran a routine warrant check, which came back clear. When May returned to Collier's car, he asked Collier for permission to conduct a search. Collier declined. May then told Collier to wait because he was calling a K-9 unit to the traffic stop.[2]

The K-9 unit, consisting of Arkansas State Police Sergeant Mark Blackerby and the drug-detection dog Raptor, arrived about four minutes later. Blackerby explained to Collier that he would run Raptor around the car, and if Raptor smelled drugs, Blackerby and May would have probable cause to conduct a search.

Blackerby ran Raptor around the car. Raptor smelled drugs and alerted to their presence. However, Raptor was unable to pinpoint the drugs' exact location. May

---

[2]On appeal, Collier does not make, and therefore waives, any argument that May unreasonably prolonged the traffic stop. *See United States v. Cooper*, 990 F.3d 576, 583 (8th Cir. 2021) ("Ordinarily, a party's failure to make an argument in [his] opening brief results in waiver of that argument.").

and Blackerby proceeded with a search. They found a small amount of marijuana intermingled with Collier's personal belongings. More importantly, they recovered ten bundles of white powder, which appeared to be cocaine. They arrested Collier.

Authorities later determined that the bundles contained about 10.08 kilograms of white powder. Powder from two bundles field-tested positive for cocaine. The bundles were sent to the Arkansas State Crime Laboratory for further analysis. The laboratory's analysis confirmed that the powder was cocaine.

The federal government obtained a one-count indictment against Collier for unlawful possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Collier pleaded not guilty, and the case proceeded to trial. The jury found Collier guilty. The district court subsequently imposed a statutory minimum sentence of ten years' imprisonment. Collier appeals.

## II. *Discussion*

On appeal, Collier raises six principal issues. We address these issues in the order that he presents them. On all six issues, we affirm.

### A. *Reliability of the Drug-Detection Dog*

First, Collier challenges the reliability of the canine, Raptor, to satisfactorily detect illicit drugs. He also contends that Raptor's alert was insufficient to establish probable cause to search Collier's car. *See* U.S. Const. amend. IV (recognizing "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . [without] probable cause").

"We review *de novo* the district court's legal determination of probable cause." *United States v. Perez*, 29 F.4th 975, 986 (8th Cir. 2022) (quoting *United States v. Gonzalez*, 781 F.3d 422, 429 (8th Cir. 2015)). A dog is presumptively reliable at detecting illicit drugs—and its alert establishes probable cause for a search—if the dog has satisfactorily completed a bona fide certification or training program. *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). "This presumption may

be overcome if a defendant can show" by cross-examination or opposing evidence "the inadequacy of [the] certification or training program or that the circumstances surrounding a canine alert undermined the case for probable cause." *Perez*, 29 F.4th at 986 (quoting *Gonzalez*, 781 F.3d at 429).

We reject Collier's challenge to Raptor's reliability. Before encountering Collier's car, Raptor completed a 320-hour basic training course under the Arkansas State Police. Collier concedes that Raptor maintained its drug-detection skills through "coordinated monthly sessions." Appellant's Br. at 11. The record contains no opposing evidence undermining Raptor's reliability. The record shows that authorities had previously deployed Raptor 158 times, it had alerted 73 times, and authorities had discovered illicit drugs 71 times. In the field, Raptor's accuracy rate was 97 percent. Our cases hold that, absent contradictory circumstances, a trained dog's alert will establish probable cause when the dog's previous in-field accuracy rate exceeds 50 percent. *See United States v. Holleman*, 743 F.3d 1152, 1157 (8th Cir. 2014) (57 percent); *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007) (54 percent). Raptor far surpassed our circuit's 50-percent standard.[3]

Collier also questions how Raptor alerted,[4] suggesting that its alert was insufficiently "profound." Appellant's Br. at 2, 12. Our "probable cause inquiry is always fact specific." *United States v. Tuton*, 893 F.3d 562, 571 (8th Cir. 2018). Every dog is unique, and a dog that smells illicit drugs is not required to communicate with its handler in any specific way. *See Holleman*, 743 F.3d at 1156. "Dogs alert in many different manners. One dog may alert in one manner while

---

[3]That is not to say that a dog with less than 50-percent accuracy is useless. The court evaluates a dog-sniff case, like any other probable-cause case, "under the totality of the circumstances." *Donnelly*, 475 F.3d at 954. Thus, the alert of a low-accuracy dog, together with other circumstances that indicate the presence of illicit drugs, can establish probable cause for a search. *See id.* at 954–55.

[4]*See* R. Doc. 79, at 8, 11 (discussing how Raptor "completely change[d] directions" and "d[id] a 180" when it "smelled something").

another dog may alert in another manner." *United States v. Howard*, 448 F. Supp. 2d 889, 898 (E.D. Tenn. 2006), *aff'd*, 621 F.3d 433 (6th Cir. 2010). The reliability of a dog's alert, not its manner, is what matters. *See Holleman*, 743 F.3d at 1156 ("Fourth Amendment jurisprudence does not require drug dogs to abide by a specific and consistent code in signaling their sniffing of drugs to their handlers." (quoting *United States v. Clayton*, 374 F. App'x 497, 502 (5th Cir. 2010) (unpublished per curiam))). Based on the record, we conclude that Raptor's own unique manner of alert reliably signaled the probable presence of illicit drugs.

Because Raptor was reliable and its alert was sufficient, Blackerby and May had probable cause to search Collier's car. The district court correctly admitted the narcotics evidence derived from the search.

## B. *Admission of the Dog-Training Expert*

Second, Collier argues that the district court erred when it permitted Major Roby Rhoads, the K-9 coordinator for the Arkansas State Police, to give expert testimony at a suppression hearing about the Arkansas State Police's dog-training program. Specifically, Collier argues that Rhoads was unqualified because Rhoads was unaware that police dog training originated in the German "State of Northrine-Westfalia" (North Rhine-Westphalia), he could not pronounce or translate the German word "Polizeispurhundprüfung," and he was unfamiliar with the history of the International Congress of Police Service Dogs. Appellant's Br. at 8–9.[5]

"We review the decision of the district court to admit expert testimony for an abuse of discretion, giving substantial deference to the district court." *United States*

---

[5]Collier's opening brief attacks Rhoads's expertise for several pages, but it does not specifically state what the district court should have done. Here, we will assume that Collier argues for Rhoads's exclusion. We will further assume without deciding that *Daubert* applies to suppression hearings. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (interpreting Fed. R. Evid. 702). *But see United States v. Ozuna*, 561 F.3d 728, 737 (7th Cir. 2009) ("[T]he primary rationale behind *Daubert* is not applicable in a suppression hearing.").

*v. Primm*, 63 F.4th 1186, 1190 (8th Cir. 2023). An expert is qualified if he has "knowledge, skill, experience, training, or education" that will enable him to give helpful testimony. *See* Fed. R. Evid. 702 (listing specific requirements). An expert's expertise must be "relevant to the task at hand." *Daubert*, 509 U.S. at 597. A court should not concern itself with a proposed expert's knowledge, skill, experience, training, or education in extraneous and irrelevant matters. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Here, Collier's challenge to Rhoads's expert testimony lacks merit. Rhoads's ignorance of certain obscure facts related to police dog training did not discredit his otherwise unobjected-to training and experience in the field. The geographic origin, etymology, and history of police dog training are not relevant to the manner and efficacy of the Arkansas State Police's current program. The district court did not abuse its discretion by permitting Rhoads to give expert testimony.

## C. *Standard for a Motion to Suppress*

Third, Collier argues that the district court legally erred when it ruled on his motion to suppress because it "utilized the wrong standard for suppression." Appellant's Br. at 11 (cleaned up). Specifically, Collier argues that the court used a "reasonable officer" standard and that it should have used a "reasonably prudent person" standard or a "reasonable person" standard. *Id.* at 12–13. The question of the appropriate standard for a motion to suppress is a question of law that we review de novo. *See United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003).

In the Fourth Amendment context, the terms "reasonable officer," "reasonably prudent person," and "reasonable person" are functionally equivalent. We have used these terms interchangeably. *See, e.g.*, *United States v. Vittetoe*, 86 F.4th 1200, 1203 (8th Cir. 2023); *United States v. Lewis*, 864 F.3d 937, 946–47 (8th Cir. 2017); *United States v. Anderson*, 674 F.3d 821, 826–27 (8th Cir. 2012). Other circuits have done the same. *See, e.g.*, *Edmond v. United States*, 899 F.3d 446, 453–54 (7th Cir. 2018); *United States v. Martin*, 613 F.3d 1295, 1301 (10th Cir. 2010) (Gorsuch, J.); *United States v. Ibarra*, 345 F.3d 711, 716 (9th Cir. 2003). And the Supreme Court has used

each of these terms—and many similar terms—with no indication that it intended to impose an unalterable formulation. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) ("reasonable police officer"); *Harris*, 568 U.S. at 248 ("reasonably prudent person"); *Maryland v. Pringle*, 540 U.S. 366, 372 (2003) ("reasonable officer"); *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("reasonable person"); *Maryland v. Buie*, 494 U.S. 325, 332 (1990) ("reasonably prudent officer"); *Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("reasonable and prudent men"); *Johnson v. United States*, 333 U.S. 10, 14 (1948) ("reasonable men"); *Carroll v. United States*, 267 U.S. 132, 162 (1925) ("a man of reasonable caution"); *Stacey v. Emery*, 97 U.S. 642, 645 (1878) ("a man of prudence and caution").

Based on our review of the Fourth Amendment case law, we reject Collier's argument that reversal is required here because the district court's denial of his motion to suppress did not use a specific phrase. The district court's evaluation was clearly one of reasonableness. An evaluation for reasonableness, in light of the totality of the circumstances, is all the case law requires. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (calling "reasonableness" the Fourth Amendment's "ultimate touchstone" (internal quotation marks omitted)); *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983) (holding that the Fourth Amendment analysis turns on common sense or practical judgment, not technicalities).

## D. *Rule 16(a) Disclosures*

Fourth, Collier argues that the government violated Federal Rule of Criminal Procedure 16(a)(1)(G) by providing inadequate expert disclosures about Senior Forensic Chemist Dan Hedges of the Arkansas State Crime Laboratory before Hedges testified at trial. Thus, Collier contends that the district court should have excluded Hedges or else limited the scope of his testimony.

"We review the decision of the district court to admit expert testimony for an abuse of discretion, giving substantial deference to the district court." *Primm*, 63 F.4th at 1190. "A defendant asserting reversible error under Rule 16(a)(1)(G) must demonstrate prejudice resulting from the district court's decision to admit the

contested testimony." *United States v. Waln*, 916 F.3d 1113, 1115 (8th Cir. 2019) (quoting *United States v. Kenyon*, 481 F.3d 1054, 1062 (8th Cir. 2007)). Prejudice exists when the government's failure to make adequate disclosures unfairly surprises the defendant, *see* Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment, or deprives the defendant of "a fair opportunity to prepare to cross-examine [the] expert witness[] and secure opposing expert testimony if needed," *id.* advisory committee's note to 2022 amendments; *see McClendon v. United States*, 587 F.2d 384, 388–89 (8th Cir. 1978) (stating that prejudice exists when the government surprises the defendant and thereby prevents him from "conduct[ing] a thorough cross-examination of each of the government witnesses at the trial").

Here, the government provided Collier's counsel with copies of Hedges's curriculum vitae and laboratory analysis in December 2022, well in advance of Collier's August 2023 trial. Collier's counsel waited until trial to challenge these disclosures, arguing that "[w]e are unsure if they are complete." R. Doc. 126, at 100. The district court asked counsel whether he sought to exclude Hedges, and he replied that he "believe[d]" so. *Id.* at 102. The court reminded counsel that it had given the parties a deadline, "21 days before trial," for moving to exclude a witness. *Id.* at 107. Collier's counsel could not provide a "sufficient response" for why he missed the court's deadline. *Id.* at 108 (quoting the court). The court ruled that Collier would suffer "no prejudice . . . by allowing the expert to testify." *Id.* at 120. The court stated, "[M]y scheduling order means what it says." *Id.*

Assuming without deciding that the government's expert disclosures about Hedges were inadequate (an issue the parties dispute in their briefs), Collier suffered no prejudice for three reasons. First, the government made its disclosures more than seven months before trial—"a point in time early enough to avoid any possibility of prejudice resulting from surprise." *McClendon*, 587 F.2d at 388. Collier's defense had ample time to seek additional disclosures if it thought they were necessary. Second, given how far in advance the government made its disclosures, Collier's defense had "a fair opportunity to prepare to cross-examine [Hedges] and secure opposing expert testimony if needed." Fed. R. Crim. P. 16 advisory committee's

note to 2022 amendments. Third, Collier's motion to exclude Hedges's testimony was untimely, and a district court is justified in enforcing its reasonable deadlines. *See* Fed. R. Crim. P. 12(c)(3) ("If a [defendant] does not meet the [district court's] deadline for making a [Rule 16 discovery] motion, the motion is untimely."); *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) ("Courts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases.").

In other words, when the government makes its expert disclosures early and the defendant brings his motion late, the district court does not abuse its discretion by denying the defendant's untimely motion. *See* Fed. R. Crim. P. 12(c)(3). Even if the government's Rule 16(a)(1)(G) disclosures are inadequate, a defendant suffers no prejudice when his failure to request additional disclosures or prepare for cross-examination is the result of his own neglect. Like the district court, we discern no prejudice against Collier. When the court denied Collier's untimely motion and admitted Hedges as an expert witness, it acted within its discretion.

In addition, Collier contends that the government should have made expert disclosures for Sergeant Blackerby, who testified about Raptor's alert at the traffic stop. The court ruled that Blackerby could testify as a lay witness, with no expert disclosures, because his testimony was not "in the realm of real expert testimony." R. Doc. 126, at 45–48. Collier appeals the court's ruling but provides no case law to support his argument. *See* Appellant's Br. at 16–17. The government replies that the handler of a drug-detection dog may testify as a lay witness and that, consequently, expert disclosures are not required. *See* Appellee's Br. at 27–28.

Whether the officer who handles a drug-detection dog is an expert witness, for whom expert disclosures are required, or a lay witness, for whom expert disclosures are not required, appears to be an issue of first impression in our court. The Supreme Court has not spoken clearly on this issue. *See Harris*, 568 U.S. at 247 ("A defendant . . . must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the *testifying officer* or by introducing his

own *fact or expert witnesses*." (emphases added)). And among our sister circuits, only the First Circuit seems to have addressed the issue. *See United States v. Naranjo-Rosario*, 871 F.3d 86, 96–97 (1st Cir. 2017) (holding that officers who handle drug-detection dogs are expert witnesses).

We need not answer the question here. Regardless of Blackerby's expert or lay status, Collier has not "demonstrate[d] prejudice" due to the absence of expert disclosures. *Waln*, 916 F.3d at 1115 (quoting *Kenyon*, 481 F.3d at 1062); *cf. United States v. Mackey*, 83 F.4th 672, 677 (8th Cir. 2023) (rejecting a defendant's "conclusory argument" about an expert witness's professional experience). Collier has not shown that he was surprised when the government called Blackerby to testify. *See McClendon*, 587 F.2d at 388; R. Doc. 69 (identifying Blackerby as a government witness in June 2023). He also has not shown that he lacked "a fair opportunity to prepare to cross-examine [Blackerby] and secure opposing expert testimony if needed." Fed. R. Crim. P. 16 advisory committee's note to 2022 amendments. Thus, we affirm the district court's admission of Blackerby's testimony without expert disclosures.

### E. *Cocaine Isomer Defense*

Fifth, Collier raises a non-meritorious technical defense known as the "cocaine isomer defense." *See United States v. Francesco*, 725 F.2d 817, 820 n.1 (1st Cir. 1984) (collecting cases from eight circuits). This defense maintains "that the chemical identification tests used by the government [cannot] adequately distinguish between allegedly legal and concededly illegal forms of cocaine" and, therefore, that prosecutions for cocaine possession "must fail for want of proof." *United States v. Ortiz*, 610 F.2d 280, 281 (5th Cir. 1980) (per curiam).

Specifically, Collier concedes that federal law bans "cocaine, its salts, *optical and geometric isomers*, and salts of isomers," 21 U.S.C. § 841(b)(1)(A)(ii)(II) (emphasis added), but he argues that his ten bundles of white powder could have contained a non-illicit, *positional isomer* of cocaine. At the district court, Collier asserted that the government's tests could not adequately distinguish between illegal

cocaine and his purportedly legal positional isomer of cocaine. Collier requested a special jury instruction on this defense, and he moved for a judgment of acquittal. The court declined to give such an instruction, and it entered judgment on the jury's guilty verdict. These decisions were not erroneous.

Neither party identifies, nor have we located, a case from our circuit that is directly on point. *See United States v. Luschen*, 614 F.2d 1164, 1168–70 (8th Cir. 1980) (rejecting a different version of the cocaine isomer defense that involved different issues); *see also United States v. Myers*, 56 F.4th 595, 597–99 (8th Cir. 2022) (applying the categorical approach and comparing Missouri's definition of cocaine with the federal definition); *United States v. Owen*, 51 F.4th 292, 294–96 (8th Cir. 2022) (per curiam) (same with Minnesota's definition); *United States v. Oliver*, 987 F.3d 794, 807 (8th Cir. 2021) (same with Illinois's definition). Rather, we look to the First Circuit's decision in *United States v. Francesco*, 725 F.2d 817. We agree with the parties that *Francesco* is directly on point and persuasive. *See* Appellant's Br. at 18–19 (citing *Francesco* twice); Appellee's Br. at 2, 30–31 (citing *Francesco* as an apposite authority and again in the body of the brief).

In *Francesco*, federal agents seized a package "contain[ing] approximately one kilogram of a white powdery substance identified as cocaine." 725 F.2d at 819. At his trial for possession with intent to distribute, the defendant argued that the substance was not illegal cocaine but a legal cocaine isomer. *Id.* at 819–20. Based on this argument, he requested a special jury instruction and moved for a judgment of acquittal. *Id.* The district court ruled against the defendant on both points, the jury returned a guilty verdict, and the court entered judgment accordingly. *Id.*

On appeal, the First Circuit affirmed. *Id.* at 820. It explained that there are multiple isomers of cocaine, including (1) "narcotic" isomers,[6] which are unlawful to possess, and (2) non-narcotic isomers, which are chemically related but are not

---

[6]In legal usage, the word "narcotic" may refer to any "drug that is controlled or prohibited by law." *Narcotic*, Black's Law Dictionary (12th ed. 2024).

themselves unlawful. *Id.* at 820–21. Despite this distinction, the First Circuit upheld the conviction. *Id.* at 820. At trial, "government experts testified that the substances seized from [the defendant] were 'cocaine,'" and the defendant offered no evidence to the contrary. *Id.* at 821. Accordingly, the First Circuit held:

> The defendant's failure to introduce evidence in support of his isomer defense left the judge (whose instructions to the jury must be based on the evidence adduced at trial) no choice but to instruct the jury that cocaine is a Schedule II controlled substance. The jury then had no alternative but to find that the substances identified as cocaine were illegal forms of cocaine under the Drug Control Act. The instruction to the jury was not erroneous and the jury was justified in finding the defendant guilty of possession of a Schedule II controlled substance.

*Id.* at 821–22.

We adopt the First Circuit's approach here. When the government produces evidence that a defendant possessed illegal cocaine, the defendant is not entitled to a special jury instruction on his cocaine isomer defense, unless he produces or points to evidence that supports his position. *See id.* This rule accords with our circuit precedent. *See United States v. Morales*, 684 F.3d 749, 756 (8th Cir. 2012) ("A defendant is entitled to a particular jury instruction when the instruction [1] provides a correct statement of the law and [2] is supported by the evidence." (quoting *United States v. Harper*, 466 F.3d 634, 649 (8th Cir. 2006))). And this rule does not relieve the government of its burden to "prove every element of a crime beyond a reasonable doubt." *Jones v. Hendrix*, 599 U.S. 465, 487 (2023). The identity of a controlled substance is always an element of the offense. *See* 8th Cir. Model Jury Instructions: Criminal § 6.21.841A (2023) (requiring the government to prove that "the defendant was in possession of (describe substance, e.g., cocaine)").

Beyond a reasonable doubt, Collier's jury expressly found that he possessed "cocaine." R. Doc. 95. Because his cocaine isomer defense was speculative and not

-12-

supported by evidence, we hold that the district court did not abuse its discretion by denying a special jury instruction. *See United States v. Wright*, 993 F.3d 1054, 1064 (8th Cir. 2021) ("We review jury instructions for an abuse of discretion.").[7]

For similar reasons, we hold that the district court did not err when it denied Collier's motion for a judgment of acquittal. *See United States v. Sainz Navarrete*, 955 F.3d 713, 718 (8th Cir. 2020) ("We review the denial of a motion for judgment of acquittal de novo."). A judgment of acquittal, negating the jury's guilty verdict, "is warranted only when no reasonable jury could [have found] all the elements beyond a reasonable doubt." *Wright*, 993 F.3d at 1065 (quoting *United States v. Parsons*, 946 F.3d 1011, 1014 (8th Cir. 2020)). Based on the evidence presented at trial, a reasonable jury could have concluded that Collier's bundles of white powder were illegal cocaine rather than a non-narcotic cocaine isomer. *See United States v. Hall*, 552 F.2d 273, 276 (9th Cir. 1977) (rejecting a cocaine isomer defense).

F. *Curative Instruction*

Sixth, during its closing argument, the government briefly commented on Collier's post-arrest, post-*Miranda* silence. *See Miranda v. Arizona*, 384 U.S. 436 (1966); R. Doc. 127, at 91 ("Mr. Collier said nothing."). Collier moved for a mistrial, and the district court denied his motion. The court offered to give a curative instruction instead. Collier's counsel replied, "We'll leave it with the [c]ourt to do what the [c]ourt thinks appropriate." R. Doc. 127, at 98. The court advised the parties of the instruction it would give, and Collier's counsel replied, "Thank you, Your

---

[7]Defendants may present evidence-free defenses. *See United States v. Willis*, 101 F.4th 577, 585 (8th Cir. 2024) (acknowledging that defendants have a right to put forward "unorthodox defenses"); *Gill v. Maciejewski*, 546 F.3d 557, 564 (8th Cir. 2008) (noting that "a criminal defendant has no burden to present evidence or call witnesses" (emphasis omitted)). However, asserting an evidence-free defense does not entitle the defendant to a special jury instruction. *Morales*, 684 F.3d at 756. Instead, the defendant must try to raise reasonable doubt in the jurors' minds within the limits of the ordinary instructions. Here, Collier's jury was free to entertain the view that Collier possessed ten bundles of a non-narcotic cocaine isomer.

Honor." *Id.* at 98–99. Collier now challenges the denial of a mistrial and argues that the jury instruction was insufficient to cure the *Miranda* violation.

Assuming without deciding that a *Miranda* violation occurred, we review for abuse of discretion the district court's denial of a motion for a mistrial. *United States v. Shield*, 87 F.4th 883, 885 (8th Cir. 2023). "The prejudicial effect of any improper [comment] is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." *Id.* (quoting *United States v. Hollins*, 432 F.3d 809, 812 (8th Cir. 2005)). Curative instructions are ordinarily preferable to mistrials and "generally sufficient to alleviate prejudice." *United States v. Diaz-Pellegaud*, 666 F.3d 492, 503 (8th Cir. 2012) (quoting *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997)).

Upon our review of the trial transcript, we conclude that the government's comment on Collier's post-*Miranda* silence was fleeting. *See* R. Doc. 127, at 91 ("Mr. Collier said nothing."). The district court indicated that the jury might not have noticed the comment and would not place weight on it. *See id.* at 98 ("I don't want to call undue attention to this and leaving it alone might well be the better practice."). Given the comment's fleeting nature, the minor role that it played in the context of the government's much broader closing argument, and the weight of the evidence against Collier, we hold that the district court did not abuse its discretion by giving a curative instruction rather than granting a mistrial. *Cf. United States v. Askew*, 98 F.4th 116, 126 (4th Cir. 2024) (holding that a "fleeting reference" to a defendant's exercise of *Miranda* rights does not "constitute[] a *per se* due process violation"); *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) ("[A] single, inappropriate reference to a defendant's post-arrest silence that is not mentioned again is too brief to constitute a Fifth Amendment violation.").

Turning to the curative instruction's content, we note that Collier's counsel thanked the district court and did not object, so we review for plain error. *See United States v. Refert*, 519 F.3d 752, 756 (8th Cir. 2008). "Plain error only exists if (1) there was an error, (2) the error was plain, (3) the error affected [Collier's]

substantial rights, and (4) a failure to grant relief would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Falcon*, 477 F.3d 573, 577 (8th Cir. 2007)). Collier "fail[s] to show any error [in the instruction], let alone error that was plain." *United States v. Rodriguez*, 984 F.3d 704, 711 (8th Cir. 2021). Therefore, we affirm the instruction. *See id.* at 711 n.4.

### III. *Conclusion*

To the extent that Collier suggests other issues with the Arkansas State Police and the proceedings in the district court,[8] we consider the issues inadequately briefed and his arguments waived. The judgment of the district court is affirmed.

_____

[8]*See, e.g.*, Appellant's Br. at i (referring to "numerous contested issues" at the district court); *id.* at 9 (claiming that the Arkansas State Police's dog-training program is "defunct"); *id.* at 10 (claiming that "a chasm of errors and discrepancies exist[s]" in the Arkansas State Police's official records).

-15-