# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 14-1422

———————————————

United States of America

*Plaintiff - Appellee*

v.

Cesar Alexis Gonzalez

*Defendant - Appellant*

————————

Appeal from United States District Court
for the Southern District of Iowa - Davenport

————————

Submitted: November 12, 2014
Filed: March 23, 2015

————————

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

————————

GRUENDER, Circuit Judge.

Cesar Alexis Gonzalez entered a conditional guilty plea to conspiracy to distribute methamphetamine. The district court[1] sentenced him to 168 months'

———————————————

[1]The Honorable John A. Jarvey, now Chief Judge, United States District Court for the Southern District of Iowa.

imprisonment. Gonzalez appeals both the denial of his motion to suppress and his sentence. We affirm.

I.

On March 19, 2012, Tony Young approached a United Parcel Service ("UPS") truck in Wellman, Iowa and attempted to give the driver a package. When the driver said he could not take the package because it lacked a proper label, Young anxiously offered to pay the driver with cash. The driver directed Young to a nearby UPS drop-off location. When the driver later arrived at that drop-off location, he saw a package from Young's address. Because of Young's earlier behavior and the package's bulky shape and because the package's expedited delivery schedule required it to be transported by plane, the driver contacted a supervisor at the Coralville, Iowa UPS facility. After discussing the driver's concern, the supervisor opened the package. Inside, she found a large stack of cash wrapped in foil, which she brought to the attention of another supervisor, Shawn Reinhart.

Reinhart and UPS security consulted local police officer Eric Weber, and UPS decided to send the package to its intended recipient, Cesar Gonzalez, in Yuma, Arizona. Officer Weber then contacted Yuma police, who photographed the package when it arrived in Arizona. Citing concern for employee safety, UPS declined the police request to deliver the package normally. Instead, UPS allowed police to leave a note at Gonzalez's residence stating that the package was available for pick up at a local store. Police observed Gonzalez retrieve the package and return home.

On March 22, at the Coralville UPS facility, Reinhart noticed a new package from Gonzalez addressed to Young. Reinhart retrieved this package around 7:00 a.m. and called Officer Weber at about 8:15 a.m. Officer Weber told Reinhart to hold the package, and he arranged for a drug-detection dog unit to conduct a sniff. The dog unit met Officer Weber at the Coralville facility at approximately 9:30 a.m.

-2-

The dog handler told Reinhart to place Gonzalez's package in a line with three similar packages without telling him or Officer Weber which one came from Gonzalez. The handler then commanded the dog to find drugs. The dog walked by the first two packages without showing any interest, but he nudged and played with the third package and scratched at the fourth. After a short time, the handler took the dog back to the third and fourth packages. On the second pass, the dog showed no interest in the third package but again scratched at the fourth, this time also biting it. The handler did a third pass to confirm, and the dog once again scratched at only the fourth package. By 10:30 a.m., the dog sniff concluded, and the handler informed Officer Weber that the dog had signaled an alert to the fourth package. When Officer Weber learned that this package came from Gonzalez, he took possession of it and obtained a search warrant later the same day. Upon opening the package, Officer Weber discovered 7.2 ounces of methamphetamine. Officer Weber informed Yuma police about the drugs, and they obtained warrants to arrest Gonzalez and to search his home and vehicle. The search revealed marijuana, a scale, a rifle, and ammunition. After his arrest, Gonzalez admitted to police that Young was his uncle and that he had mailed Young packages in the past.

After being indicted for conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, Gonzalez filed a motion to suppress, raising several Fourth Amendment challenges. The district court denied the motion. Gonzalez subsequently pleaded guilty, reserving his right to withdraw his plea if he were to prevail on appeal from the order denying his motion to suppress. He later filed a motion to withdraw his guilty plea, which the district court denied. After denying Gonzalez's requests for a downward variance and a two-level sentence reduction for acceptance of responsibility, the court sentenced Gonzalez to 168 months' imprisonment, a sentence at the bottom of his advisory guidelines range of 168 to 210 months. He now appeals.

## II.

Gonzalez argues that the district court erred in denying his motion to suppress on several grounds. He contends that the March 19 package search and the March 22 package seizure violated his Fourth Amendment rights, that the dog sniff did not establish probable cause for a warrant to search the second package, and that evidence obtained as a result of each warrant issued in reliance on these actions was tainted. In addition, Gonzalez argues that the court erred in imposing his 168-month sentence.

### A.

We begin with the district court's denial of the motion to suppress the evidence gathered from the first package search on March 19. "When reviewing a district court's decision to deny a motion to suppress, we review factual findings for clear error and conclusions of law *de novo*." *United States v. Jimenez*, 478 F.3d 929, 931 (8th Cir. 2007). The district court held, and we agree, that this search did not implicate the Fourth Amendment. The Fourth Amendment protects only against government action. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "[A] search by a private party with no government knowledge or participation" does not implicate this constitutional right to be free from unreasonable search and seizure. *United States v. Livesay*, 983 F.2d 135, 136 (8th Cir. 1993). Although Gonzalez acknowledges that UPS employees, rather than government officials, conducted the search that revealed the cash on March 19, he argues that UPS employees were not private actors. Instead, he alleges that they operated as "de facto" government agents because UPS had a close and ongoing relationship with law enforcement and because the employees opened the package not based on UPS policy but based on a desire to aid police in uncovering illegal activity. *See United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004) (discussing the factors a court must address when determining whether a private citizen was acting as an agent of the government). We are not persuaded.

Gonzalez points to no evidence of a close and ongoing relationship between UPS and law enforcement leading up to March 19. The evidence in the record shows that police did not direct UPS to open Young's package and inspect its contents. UPS employees contacted police only after they made the independent decision to search. *See United States v. Malbrough*, 922 F.2d 458, 461-62 (8th Cir. 1990) (finding Fourth Amendment rights were not implicated when police did not know of or acquiesce in a search). Further, the UPS driver testified that he alerted his supervisor to the package based on safety concerns. *Cf. Smith*, 383 F.3d at 705 (finding a search conducted by a FedEx employee was private even though police knew of and acquiesced in the search because the employee was motivated in part by her obligation to ensure that her employer was not being used as a means of carrying contraband). The district court thus properly found that the search was private and did not implicate Gonzalez's Fourth Amendment rights. *Id.* at 705.

Gonzalez next argues that the district court erred in finding no Fourth Amendment violation in the seizure of the second package. As an initial matter, we find no support for Gonzalez's contention that the government seizure began when he gave the package to UPS in Yuma on March 21. A Fourth Amendment seizure requires meaningful interference with an individual's possessory interest. *Jacobsen*, 466 U.S. at 113. Because UPS forwarded Gonzalez's package to Iowa in the normal course of delivery on March 21, no meaningful interference by a government agent occurred. UPS's conduct on March 21 thus did not implicate Gonzalez's Fourth Amendment rights. *See Smith*, 383 F.3d at 704.

A government seizure of the second package did occur, however, on March 22 when Reinhart removed the package "from its ordinary progress in the mail and . . . diverted [it] for further investigation" pursuant to Officer Weber's request. *See id*. This temporary seizure required reasonable suspicion of criminal activity. *Id.*

Gonzalez contends that no reasonable suspicion justified detention of the second package. When determining whether valid grounds for reasonable suspicion exists, our *de novo* review requires us to "examine the totality of the circumstances . . . evaluating those circumstances as they would be understood by those versed in the field of law enforcement." *United States v. Morones*, 355 F.3d 1108, 1112 (8th Cir. 2004) (quoting *United States v. Demoss*, 279 F.3d 632, 636 (8th Cir. 2002)). Gonzalez argues that reasonable suspicion did not exist because each of the events leading up to the package's temporary detention—that is, his flagging down a driver and sending cash via UPS—were innocent. However, even "a series of acts that appear innocent, when viewed separately, may warrant further investigation when viewed together." *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir. 1992). Officer Weber asked Reinhart to hold the second package because it came from Arizona and was addressed to the same person who anxiously attempted to pay a UPS employee with cash to take a package containing a large stack of money just days before. We agree with the district court's conclusion that these facts, when viewed in the aggregate by a trained law-enforcement officer, gave rise to an objectively reasonable suspicion of criminal activity. *Cf. United States v. Lakoskey*, 462 F.3d 965, 976 (8th Cir.), *as amended on reh'g* (Oct. 31, 2006) (listing factors creating reasonable suspicion that a package contained narcotics).

Gonzalez also contends that the seizure of the second package was unlawful because its duration was unreasonable. Gonzalez relies on the Supreme Court's decision in *United States v. Place*, 462 U.S. 696 (1983). Though *Place* explained that "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion," the Court in *Place* declined to adopt any bright-line time limitation. *Id*. at 709. Instead, the Court explained that factors such as police diligence and the degree of intrusion on the suspect's liberty must be considered when examining whether a detention violated the Fourth Amendment. *Id*. at 709-10. "Where investigators have acted with reasonable diligence, courts have

found acceptable the detention of mail for anywhere from twenty-nine hours to five days." *Lakoskey*, 462 F.3d at 977 (quoting *United States v. Ramirez*, 342 F.3d 1210, 1212 (10th Cir. 2003) (collecting cases)).

We agree with the district court's conclusion that the seizure's duration was reasonable. Reinhart removed the package from the ordinary delivery stream at about 7:00 a.m. Around 8:15 a.m., Officer Weber told him to hold the package for further investigation. A drug-detection dog unit arrived around 9:30 a.m. By 10:30 a.m., the dog sniff was complete, and Officer Weber secured the package pending receipt of a search warrant that was issued later the same day. Even if the seizure began at the earliest point at which the package was diverted, 7:00 a.m., the detention's duration of three and a half hours did not violate Gonzalez's Fourth Amendment rights. *See United States v. Gomez*, 312 F.3d 920, 925 (8th Cir. 2002) (finding detention of package reasonable even though twelve to fourteen hours passed between the time reasonable suspicion was established and probable cause was clearly demonstrated). Nothing in the record suggests police exercised suboptimal diligence. *See United States v. Donnelly*, 475 F.3d 946, 953-54 (8th Cir. 2007). Gonzalez has "not suggested that a similarly trained canine unit could have reached the scene sooner." *Id*. at 954. Finally, Gonzalez did not experience any limitation on his freedom of movement comparable to that suffered by the defendant in *Place*, in which the Supreme Court emphasized that "seizure of personal luggage from the immediate possession of the suspect . . . intrude[d] on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary." 462 U.S. at 708. We thus affirm the district court's denial of the motion to suppress based on this seizure.

In addition to challenging the March 19 search and the March 22 seizure, Gonzalez contends that the search of the second package was unlawful because the dog sniff did not establish probable cause for a search warrant. We review *de novo* the district court's legal determination of probable cause. *United States v. Solomon*,

432 F.3d 824, 827 (8th Cir. 2005). "A police officer has probable cause to conduct a search when 'the facts available to him would warrant a person of reasonable caution in the belief' that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. ---, 133 S. Ct. 1050, 1055 (2013) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). "In evaluating whether the [Government] has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances." *Id.*

The Supreme Court recently provided guidance on probable cause based on drug-detecting dog alerts, stating that "a court can presume (subject to any conflicting evidence offered) that [a] dog's alert provides probable cause to search" if "a bona fide organization has certified a dog after testing his reliability in a controlled setting . . . [or] if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Id.* at 1057. This presumption may be overcome if a defendant can show, either through cross-examination or introducing his own fact or expert witness, the inadequacy of a certification or training program or that the circumstances surrounding a canine alert undermined the case for probable cause. *Id.* at 1057-58.

At Gonzalez's suppression hearing, the Government presented a comprehensive list of the drug dog's qualifications. The court received copies of the dog's Midwest Canine Certification and a recertification from the United States Police Canine Association and heard extensive testimony regarding the in-service training completed by the dog and his handler leading up to the sniff on March 22. This testimony led the district court to conclude that the dog's "training, experience, and certification are such that his positive alert [to the fourth package] on March 22, 2012 was an exceedingly reliable indication that controlled substances would be found inside the package."

We agree with the district court's conclusion that Gonzalez did not overcome the presumption of probable cause that attaches when a well-trained dog gives an alert. *See Harris*, 133 S. Ct. at 1058. Although Gonzalez's expert testified that he was unsatisfied with some of the dog's qualifications, "all the facts surrounding [the] dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id*. The dog's résumé included multiple certification and training programs, and, as the Supreme Court observed in *Harris*, "law enforcement units have . . . [a] strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources." *Id.* at 1057. Similarly, the circumstances of the alert, including the dog's initial interest in another package, do not give us cause to doubt the dog sniff's trustworthiness. The evidence shows that UPS employees created the package line up outside the presence of the dog and his handler. During the sniff, the dog alerted by scratching and biting at only one package, and he did so consistently. The handler testified that this dog's alert signal is scratching and biting at the object containing narcotics and that the dog's act of initially nudging package three was not an alert. Accordingly, we affirm the district court's determination that the court had probable cause to issue a warrant based on the dog sniff.

Because Officer Weber omitted from the search warrant application that the drug dog initially nudged the third package, Gonzalez argues that the court erred in denying his motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). To receive a *Franks* hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Jacobs*, 986 F.2d 1231, 1233-34 (8th Cir. 1993) (quoting *Franks*, 438 U.S. at 155-56). "[I]f the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

*Id.* (quoting *Franks*, 438 U.S. at 156). This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements. *See United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007). We review denial of a *Franks* hearing for abuse of discretion. *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013).

The district court denied Gonzalez's request for a *Franks* hearing because Gonzalez had not shown that Officer Weber lied or acted with reckless disregard for the truth when he omitted from the search warrant application that the dog initially showed interest in package three. We agree. Though our precedent states that the reckless disregard for the truth "may be inferred from the fact that . . . information was omitted," *Jacobs*, 986 F.2d at 1235, this inference is valid only when the defendant shows that the "omitted material would be 'clearly critical to the finding of probable cause.'" *Id.* (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). Gonzalez has failed to establish that the omitted information was critical; that is, he failed to show that "the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *See Williams*, 477 F.3d at 557 (quoting *Reivich*, 793 F.2d at 961). As discussed above, an affidavit supplemented with information about the dog's initial reaction to package three, which did not constitute an alert for this dog, still would have provided probable cause to support issuance of a warrant to search package four, to which the dog gave the appropriate alert signal. Accordingly, we find that Gonzalez did not make a substantial preliminary showing that Officer Weber acted with reckless disregard for the truth. We therefore find no abuse of discretion in the district court's decision to deny Gonzalez's request for a *Franks* hearing.

Because we find no Fourth Amendment violation, we reject Gonzalez's contention that other evidence obtained by police, including Gonzalez's statements and evidence taken from the search of his home, constituted fruit of the poisonous tree. *See United States v. Crisolis-Gonzalez*, 742 F.3d 830, 838 (8th Cir. 2014). We

similarly reject his contention that subsequent warrants issued based on information obtained from the package searches were tainted.

## B.

In addition to his Fourth Amendment arguments, Gonzalez contends that the district court erred by imposing a 168-month sentence. In reviewing Gonzalez's sentence, we "first ensure that the district court committed no significant procedural error." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). We "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* (quoting *Gall*, 552 U.S. at 51).

Gonzalez argues that the court erred when it refused to give him a two-level sentence reduction for acceptance of responsibility under USSG § 3E1.1(a). We note that a "district court is in a unique position to evaluate acceptance of responsibility, [and] we will not disturb a district court's decision to deny or grant the reduction unless that decision is clearly erroneous." *United States v. Walter*, 62 F.3d 1082, 1083 (8th Cir. 1995) (per curiam). We reverse only if the court's denial "is so clearly erroneous as to be without foundation." *United States v. Adejumo*, 772 F.3d 513, 536 (8th Cir. 2014) (quoting *United States v. William*, 681 F.3d 936, 938 (8th Cir. 2012)).

Here, the district court determined that Gonzalez should not receive the two-level reduction. We discern no clear error in this determination. "The guilty plea itself did not entitle [Gonzalez] to a reduction in sentence 'as a matter of right.'" *United States v. Passmore*, 984 F.2d 933, 938 (8th Cir. 1993) (quoting USSG § 3E1.1 cmt. 3). Rather, Gonzalez held the burden of establishing acceptance of responsibility. *See United States v. Morales*, 923 F.2d 621, 628 (8th Cir. 1991). The district court did not clearly err in finding that Gonzalez had not met his burden because his attempt to withdraw the plea "was inconsistent with the Guidelines'

requirement that the defendant clearly demonstrate[] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Passmore*, 984 F.2d at 938-39 (finding no abuse of discretion in denial of two-level reduction for acceptance of responsibility where defendant attempted to withdraw his guilty plea). Because we cannot say that the district court's decision was "without foundation," we affirm the denial of this reduction. *See United States v. Duke*, 935 F.2d 161, 162 (8th Cir. 1991).[2]

Gonzalez also contends that the court abused its discretion by refusing to vary downward and by failing to consider properly the disparity between his 168-month sentence and the 135-month sentence imposed on his co-conspirator, Tony Young. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Borromeo*, 657 F.3d 754, 756 (8th Cir. 2011) (quoting *Feemster*, 572 F.3d at 461). A sentence within the Guidelines range, such as the one imposed on Gonzalez, "is accorded a presumption of substantive reasonableness on appeal." *United States v. Toothman*, 543 F.3d 967, 970 (8th Cir. 2008).

We find no abuse of discretion. Regarding the refusal to vary downward, we note that the district court heard Gonzalez's arguments for a downward variance and stated that it had received Gonzalez's memorandum listing all the reasons for variance he now raises on appeal. These facts, combined with the court's recitation of several 18 U.S.C. § 3553 factors justifying the 168-month sentence, show that the

[2]Moreover, we note that the district court stated it would impose the same sentence even if the two-level reduction were granted. *See United States v. Straw*, 616 F.3d 737, 742 (8th Cir. 2010) ("Incorrect application of the Guidelines is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence.").

court was fully aware of its ability to grant a downward variance but declined to do so. *See United States v. Perkins*, 526 F.3d 1107, 1110 (8th Cir. 2008) (stating that specific findings on all § 3553(a) factors are not needed; evidence that district court was aware of relevant factors is sufficient). Moreover, when imposing Gonzalez's sentence, the court stated that "the Guideline sentencing system adequately addresse[d] the circumstances of this defendant and that the sentencing range [was] reasonable."

Likewise, we are not persuaded that the district court failed to weigh correctly the disparity between Gonzalez's and Young's prison terms. *See* 18 U.S.C. § 3553(a) (listing sentencing disparity as a factor). At sentencing, the court stated that it considered the need to avoid a sentencing disparity. The record shows that the court made the decision to impose the 168-month sentence based on Gonzalez's unique characteristics, including his pattern of escalating drug offenses and the fact that he was on probation at the time he committed the criminal act in this case. *See United States v. Plaza*, 471 F.3d 876, 880 (8th Cir. 2006) (holding that, when a defendant and his codefendant are not similarly situated, "the district court does not need to sentence these individuals to the same length of imprisonment to avoid an unwarranted sentencing disparity"). For all of the above reasons, we find no abuse of discretion in the district court's decision to impose a 168-month sentence.

III.

We affirm.[3]

_____

_____

[3]We deny Gonzales's pro se motion to file a supplemental brief as "we generally do not accept pro se motions or briefs when an appellant is represented by counsel." *See United States v. Donnell*, 596 F.3d 913, 926 (8th Cir. 2010) (quoting *United States v. Barker*, 556 F.3d 682, 690 n.3 (8th Cir. 2009)). Likewise, we deny Gonzalez's August 28, 2014 motion to correct the record because we find no merit in his claim that his suppression hearing transcript was altered.