# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-1104

_____

United States of America

*Plaintiff - Appellee*

v.

Curtis Lee Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: October 20, 2021
Filed: December 23, 2021

_____

Before SMITH, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Curtis Lee Smith conditionally pleaded guilty to possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18

U.S.C. § 924(c)(1)(A)(i). Smith reserved the right to appeal the district court's[1] denial of his motion to suppress evidence seized through execution of a search warrant of his motel room, his statements to police during an interrogation, and an eyewitness identification. We affirm.

## I. Background

In January 2019, police officers in Davenport, Iowa, responded to a 911 report that a woman named Raynesha was being held against her will by a man with a gun. The caller identified the motel and room number where the two would be found. Upon arrival, officers spoke to Raynesha Amling, who stated that she was fine and would soon be leaving in an Uber. She called the man she alleged to be the 911 caller, becoming very loud and angry during the conversation because she believed she would be taken into custody on an arrest warrant. The officers identified the man in the room as Smith. They decided to end the investigation, relying on Amling's indication that she was fine and would be leaving. As the responding officers departed, detectives notified them that a warrant had been issued for Amling's arrest and that charges had been approved against Smith. The detectives indicated that they would be joining the officers on scene. Meanwhile, one detective stayed at the police station to apply for a search warrant for Room 220.

The officers remained nearby and arrested Amling when she left the room. They asked Smith to exit the motel room, but he did not do so. Detectives arrived shortly thereafter, whereupon an officer again knocked on the door. When Smith opened it, officers entered and handcuffed him. They took him to the police station, where Smith waited approximately twenty minutes while a detective questioned

---

[1] The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa, adopting the report and recommendations of the Honorable Stephen B. Jackson, Jr., United States Magistrate Judge for the Southern District of Iowa.

Amling. During this time, Smith yelled from his interview room, prompting the detective to stop interviewing Amling and ask if he wanted to talk. Smith affirmed that he did and initialed each line of a printed Miranda waiver prior to his interview.

The search warrant was approved shortly after Smith was arrested. Officers found marijuana, three firearms, ammunition, a cell phone, and more than $2,000 in cash in the room. After observing a bullet hole in a shared wall, they checked on the neighboring room. Jennifer Allred, the guest in that room, immediately identified a photo of Smith as a person staying in Room 220 whom she had spoken to about a gunshot.

After being indicted on federal drug and firearm charges, Smith moved to suppress the evidence from the motel room, his in-custody statements, and Allred's photo identification. As mentioned above, the district court denied the motion, and Smith entered a conditional guilty plea. We review the district court's factual findings for clear error and legal determinations *de novo*. United States v. Clay, 646 F.3d 1124, 1127 (8th Cir. 2011).

## II. Search Warrant

The application for a search warrant included an affidavit setting forth five paragraphs of facts. Those facts state that a 911 caller had reported that Raynesha Amling had told him "she was trying to get away from a guy" with a firearm in Room 220; the caller had provided Amling's phone number, which was corroborated by police; officers had identified the occupants of Room 220 as Amling and Smith, both of whom were being detained by police; Amling was subject to an arrest warrant for a false police report; Smith was a suspect in an October shots-fired incident in which the firearm was never recovered; and the Scott County Attorney's Office had approved the following charges against Smith: felon in possession of a firearm, going armed with intent, and intimidation with a dangerous weapon.

A. Probable Cause

Smith argues that the affidavit failed to support a finding of probable cause. "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gater, 868 F.3d 657, 660 (8th Cir. 2017). We review a finding of probable cause with deference to the warrant-issuing judge, requiring only that there was "a substantial basis for concluding that probable cause existed." United States v. Johnson, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks and citations omitted). We conclude that there was a substantial basis for finding a fair probability that a firearm would be found in Room 220.

Smith first alleges that information regarding his alleged criminal conduct in October was stale. Whether information is stale depends on factors such as "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." Id. at 877 (quoting United States v. Colbert, 828 F.3d 718, 727 (8th Cir. 2016)). Smith relies exclusively on the fact that three months had passed since the October incident, but we have concluded that information was not stale even where much longer periods had passed. See id. at 878 (eleven months); United States v. Lemon, 590 F.3d 612, 614 (8th Cir. 2010) (eighteen months); United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995) (three years as to one witness's statements; four months as to another's). The passage of time is less important in deciding whether information is stale "when the facts recited indicate activity of a continuous nature." See Maxim, 55 F.3d at 397 (quoting United States v. Jones, 801 F.2d 304, 314 (8th Cir. 1986)). Because one of the charges against Smith was for a continuing offense (felon in possession of a firearm), we conclude that the information was not stale.

Smith also argues that there was no connection between the motel room and the October incident to create a fair probability of finding the October-employed gun in

Room 220. There must be a "nexus" between the evidence to be seized and the place to be searched, considering "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." Johnson, 848 F.3d at 878 (quoting Colbert, 828 F.3d at 726). The 911 caller's report that a man with a gun was holding a woman against her will, and the subsequent identification of the man in the room as Smith, provided the missing connection between the possible evidence (the gun) and Room 220.

Finally, Smith argues that because the affidavit did not identify the 911 caller, it lacked the corroboration of the alleged criminal conduct necessary to establish probable cause. The Supreme Court has held that an anonymous tip "lacked the moderate indicia of reliability" necessary to establish probable cause when it provided only a "description of a subject's readily observable location and appearance," and not "predictive information" or other means for officers to verify that the tipster had "inside information." Florida v. J.L., 529 U.S. 266, 271–72 (2000). Here, however, the report described information that would not be readily observable—the name, phone number, and presence of the woman in the motel room, which officers had verified as being accurate. That corroboration, combined with the facts that the woman was reported to be held against her will by a man with a gun and Smith had been identified as the man in the room and as the suspect in a shots-fired incident, provided a substantial basis for finding probable cause to search the room for firearms.

## B. Franks Hearing

Smith next argues that he was entitled to a hearing under Franks v. Delaware, 438 U.S. 154 (1978), because the search warrant affidavit omitted information that, if included, would have precluded a finding of probable cause. Although the district court later determined that Smith had not been entitled to a hearing, the magistrate judge had held a hearing that it described as "arguably" equivalent to a Franks

hearing and concluded that probable cause existed even considering the omitted information. We assume without deciding that Smith was entitled to a <u>Franks</u> hearing. "We review de novo whether the inclusion of the omitted information would not support a finding of probable cause." <u>United States v. Miller</u>, 11 F.4th 944, 953 (8th Cir. 2021).

Under <u>Franks</u>, the court must suppress the evidence obtained under a search warrant if the defendant shows that (1) the affiant omitted information from the affidavit with reckless disregard for the truth, and (2) "the affidavit would not establish probable cause" if the omitted information were included. <u>See United States v. Cowling</u>, 648 F.3d 690, 695 (8th Cir. 2011) (quoting <u>United States v. Mashek</u>, 606 F.3d 922, 928 (8th Cir. 2010)). "*Only* if the affidavit as supplemented by the omitted material *could not* have supported the existence of probable cause will suppression be warranted." <u>United States v. Daigle</u>, 947 F.3d 1076, 1085 (8th Cir. 2020) (internal quotation marks, alteration, and citation omitted). Probable cause, as noted above, requires a "fair probability that contraband or evidence of criminal activity will be found in the place to be searched." <u>See</u> <u>Cowling</u>, 648 F.3d at 695. It is based on a "practical, commonsense inquiry that considers the totality of the circumstances set forth in the information before the issuing judge." <u>United States v. Sherman</u>, 372 F. App'x 668, 674 (8th Cir. 2010) (internal quotation marks and citation omitted).

Smith argues that the following facts should have been included in the affidavit: (1) the 911 caller identified Amling as the mother of his child but knew only her first name; (2) the officers had determined that they did not need to continue looking for a gun with respect to the 911 call because the facts at the scene differed from those mentioned in the call, specifically in that: (3) Amling indicated she was not being held against her will; (4) officers had not found any evidence of a firearm at the scene; and (5) officers had not observed any signs of a domestic disturbance. Smith suggests that had these facts been included in the affidavit, the 911 call would have been insufficient to establish probable cause, so it would have been "clear that

the basis for the warrant affidavit was solely the investigation of the October 2018 shooting incident." As discussed above, he argues the October incident was insufficient to support a finding of probable cause because it lacked a nexus to Room 220. Smith thus erroneously attempts to treat the 911 call and the October incident as separate reasons for supporting probable cause that can be independently assessed and rejected, an approach that fails to consider the totality of the circumstances as required.

Although the omitted facts may cast some doubt on the comprehensiveness of the 911 caller's report, they do not render the affidavit incapable of establishing the existence of probable cause. A responding officer testified that their decision not to investigate the room based on the 911 call did not mean that they had determined there was no gun in the room. He further testified that victims in domestic disturbances had several times falsely claimed to be fine and had thereby limited his ability to investigate. Amling's assertion that she was fine and the officers' inability to confirm the 911 caller's report thus did not render the 911 call irrelevant. Even if the affidavit were supplemented as above, a judge could reasonably conclude that probable cause existed for finding firearms in Room 220.

## III. Statements to Police

### A. Officers' Entry into Room 220

Smith argues the district court erred in concluding the warrantless entry into his motel room was consensual. He therefore asserts that the fruits of that illegal entry, including his subsequent statements to police while in custody, must be suppressed. We need not decide whether officers had consent to enter, because even if consent was lacking, the challenged evidence was admissible under the inevitable discovery doctrine.

The Fourth Amendment prohibits officers "from making a warrantless and nonconsensual entry" into the home to execute a felony arrest. Payton v. New York, 445 U.S. 573, 576 (1980). This prohibition also extends to "temporary dwelling places such as hotel or motel rooms." United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997). "Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Miller, 11 F.4th 944, 954 (8th Cir. 2021) (internal quotation marks and citation omitted). Evidence that is "later discovered and found to be derivative of an illegality" must also be excluded. Id. (quoting United States v. Riesselman, 644 F.3d 1072, 1078 (8th Cir. 2011)). The inevitable discovery doctrine, however, creates an exception to the exclusionary rule. Under that doctrine, "the government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." Conner, 127 F.3d at 667.

Officers would have inevitably heard Smith's statements when they detained him pursuant to execution of the search warrant, which they were already pursuing at the time they entered Room 220. Smith argues that the inevitable discovery doctrine is inapplicable because the search warrant should not have been granted, a challenge that we have rejected, and so Smith's statements need not have been suppressed.

B. Miranda Waiver

Smith argues that his waiver of Miranda rights was not knowing and intelligent because (1) he was surprised by his arrest, (2) he was very cold during the transport

-8-

to the police station,[2] and (3) he had not been told why he was arrested. For a custodial interrogation-derived statement to be admissible, a defendant must waive his Miranda rights knowingly, intelligently, and voluntarily. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Whether the waiver was knowing and intelligent is a distinct inquiry from whether it was voluntary; it requires that the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The court must consider the totality of the circumstances in evaluating whether rights were validly waived. Id. The government has the burden to prove such waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). An express written waiver "is usually strong proof of the validity of that waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979).

We conclude that Smith waived his rights knowingly and intelligently. While waiting alone in an interview room at the police station, Smith called out repeatedly to Amling. In response to a detective's question whether he wanted to talk to him, Smith said, "Yes, come on, I want to have a conversation," while tapping the table impatiently. The detective provided a printed Miranda waiver form, which Smith initialed next to each of the six listed rights prior to his interview. Smith was 24 years old at the time, had successfully completed a high school equivalency test, and had previous experience with law enforcement. Considering the totality of the circumstances, none of the reasons given by Smith plausibly required a finding that he was not aware of the nature of the rights listed on the Miranda waiver or of the consequences of signing the waiver.

_____

[2]Smith was taken into custody on an extremely cold morning, and he was not wearing a shirt when he answered the door. Officers put a zip-up jacket over Smith after he was handcuffed and turned up the heat in the squad car while transporting him to the police station.

## IV. Eyewitness Identification

Smith argues that Allred's photo identification should have been suppressed because it was obtained during an impermissibly suggestive procedure. When considering the admissibility of identification evidence, we first determine whether "the identification procedures were impermissibly suggestive." United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (internal quotation marks and citation omitted). We then consider whether, given the totality of the circumstances, "the suggestive procedures created a very substantial likelihood of irreparable misidentification." Id. (internal quotation marks and citation omitted).

As recounted above, upon observing a bullet hole in a wall to a neighboring room during the motel room search, the officers checked on the occupant of that room, Jennifer Allred. Allred stated that a bullet had penetrated her dividing wall several days prior, and that she had gone outside to investigate. She spoke to two people from Room 220, who she knew had been staying there for several days. The man let her use his phone to call the front desk. Allred immediately identified Smith as the man she had spoken to when an officer showed her a mugshot photo of Smith wearing an orange jail uniform.

Smith argues that showing that photo in these circumstances was impermissibly suggestive. We have recognized that use of single-photograph displays can be impermissibly suggestive. See, e.g., United States v. Patterson, 20 F.3d 801, 806 (8th Cir. 1994); United States v. Murdock, 928 F.2d 293, 297 (8th Cir. 1991); Ruff v. Wyrick, 709 F.2d 1219, 1220 (8th Cir. 1983) (per curiam). Putting aside the government's argument that this was the type of "prompt on-the-scene confrontation[]" we have held to be constitutional unless "special elements of unfairness" were present, see United States v. Martinez, 462 F.3d 903, 910–11 (8th Cir. 2006) (quoting United States v. King, 148 F.3d 968, 970 (8th Cir. 1998)), we instead hold that Allred's identification was alternatively admissible because there

was not "a very substantial likelihood of irreparable misidentification."  See Williams, 340 F.3d at 567 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  We consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  Id. (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).  Allred did not provide a description prior to being shown the photo of Smith, nor did she state her level of certainty about the identification or how closely she had observed Smith previously.  She had had a conversation with him, however, and knew that he had been staying in the motel for several days.  It is unclear when she had last seen Smith, but she had spoken to him about the gunshot only a few days prior to the photo identification.  She confirmed without hesitation that the photo matched the person she had seen, which implies a high degree of certainty.  We therefore conclude that the district court did not err in denying the suppression of Allred's statements.

The judgment is affirmed.

_____