# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-3560
_____

United States of America

*Plaintiff - Appellee*

v.

Johnathon Lawrence Rose

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa
_____

Submitted: September 26, 2024
Filed: January 3, 2025
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Johnathon Lawrence Rose entered a conditional plea of guilty to possessing five grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and unlawfully possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After determining Rose was a career offender, the district court sentenced him to a total of 210 months of

imprisonment. He now appeals the district court's denial of his motion to suppress evidence and his sentence. We affirm in part and reverse in part.

## I. Background

In January 2020, Detective Josh Winter of the Clinton, Iowa, Police Department spotted a car with heavily-tinted windows. After following the car and watching it abruptly turn into a parking lot, Detective Winter initiated a traffic stop, believing the dark windows violated Iowa law. The driver of the car, Rose, immediately got out, but Winter directed Rose to get back in the car. This occurred at approximately 1:48 p.m. Although Rose complied, his behavior made Winter nervous. Winter requested a patrol unit to bring a tint meter. He also requested a canine unit because he had information that Rose was involved with trafficking guns and drugs.

While Detective Winter collected and checked the validity of Rose's driver's license, proof of insurance, and registration, another police officer arrived and tested the tint of the car window. The tint meter revealed that only 14% of light passed through the front passenger window, well below the 70% Iowa law required. While he was preparing a citation for the improper tint, dispatch informed Winter that Rose did not have a valid Iowa driver's license. So Winter also prepared a citation for driving without a valid driver's license.

Meanwhile, canine handler Officer Brennen Roling arrived with his drug-detection dog and directed the dog to sniff around the outside of the car. At roughly 1:58 p.m., the dog sniffed louder and sat at the front of the car — its alert for drugs. About ten seconds later, the dog alerted near the passenger door by again changing its behavior and sitting. Officer Roling took the dog back to his vehicle and then informed Winter, who was completing the citation process in his police car, of the alerts.

Based on the dog's alerts, officers searched Rose's car and found suspected drug residue and drug paraphernalia. After handcuffing Rose, Detective Winter also found pills on Rose, which Winter suspected were ecstasy and THC wax. While in the police car, Winter advised Rose of the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and drove Rose to the police department. While at the department, Rose made incriminating statements. Winter then applied for a search warrant for Rose's residence. At Rose's residence, officers found ammunition, drug paraphernalia, and an incomplete AR-15 rifle. Later at the county jail, officers again searched Rose and his clothing and found a loaded pistol and a baggie of drugs which included methamphetamine.

A grand jury indicted Rose for possessing five grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and unlawfully possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(g)(2). The district court held an evidentiary hearing after he moved to suppress evidence. The court denied the motion, and Rose entered a conditional guilty plea that reserved his right to appeal the denial of the motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). The court determined Rose was a career offender under the United States Sentencing Guidelines Manual (Guidelines) § 4B1.1, applied a career offender enhancement, and sentenced him to concurrent terms of 210 months of imprisonment on count one and 120 months on count two. Rose appealed to this court arguing that his sentence was substantively unreasonable, and we affirmed. *United States v. Rose*, No. 21-2023, 2022 WL 2965998 (8th Cir. July 27, 2022) (unpublished).

Rose then filed a motion for relief under 28 U.S.C. § 2255 alleging ineffective assistance of counsel, among other claims. The district court agreed counsel was ineffective in failing to raise the suppression ruling on appeal, so the court vacated his sentence and reimposed it. *See United States v. Prado*, 204 F.3d 843, 845 (8th Cir. 2000) ("When a defendant has been unconstitutionally deprived of appellate review due to ineffective assistance of counsel, the prescribed procedure is for the

district court to vacate the sentence and then reimpose it, allowing the defendant ten days to appeal from the imposition of the new sentence.").  Rose now appeals.

## II.  Analysis

Rose first asks us to reverse the district court's denial of his motion to suppress.  He seeks to suppress evidence from the traffic stop, searches, and incriminating statements by arguing officers violated his constitutional rights.

In reviewing a district court's denial of a motion to suppress evidence, we review the court's factual findings for clear error and questions of constitutional law de novo.  *United States v. Douglas*, 744 F.3d 1065, 1068 (8th Cir. 2014).  We will "affirm unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made."  *Id.* (internal quotation marks omitted) (quoting *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008)).

To start, Rose argues law enforcement violated the Fourth Amendment by unreasonably stopping him and searching his vehicle.  We disagree.

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. Const. amend. IV.  "A traffic stop is a seizure, so it must be supported by reasonable suspicion or probable cause."  *United States v. Maurstad*, 35 F.4th 1139, 1143 (8th Cir. 2022).  "But '[a]ny traffic violation, however minor, provides probable cause for a traffic stop.'"  *Id.* (alteration in original) (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)).  An officer's "motivation for the stop is irrelevant."  *United States v. Rederick*, 65 F.4th 961, 965 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 241 (2023).

Rose argues Detective Winter violated his rights under the Fourth Amendment because there was no reasonable, objective reason for the stop.  We disagree.  Winter stopped Rose because he believed the tint on Rose's windows

violated state law. *See* Iowa Code § 321.438(2). Rose's window tint allowed only 14% light transmittance, well below the 70% transmittance for front-seat windows required under Iowa law. *See* Iowa Admin. Code r. 761-450.7(321). The district court thus did not err in determining that Winter had probable cause to stop Rose. *See Maurstad*, 35 F.4th at 1143.

Rose also argues Detective Winter's testimony at the suppression hearing was inconsistent with his testimony at Rose's grand jury hearing regarding his location and that of Rose when he first saw Rose's car. Rose challenges Winter's ability to have seen the front windows. Winter testified at the suppression hearing that he saw Rose's car with tinted windows, followed it, watched it turn, and saw it pull into a parking lot. Even if there was some inconsistency as to the location of Rose and Winter when Winter first spotted the car, it is reasonable to believe Winter observed one of the front windows at some point while he followed Rose and watched him turn. The district court found Winter was credible, and "as we have stated many times, '[a] credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal.'" *United States v. Guzman*, 926 F.3d 991, 998 (8th Cir. 2019) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Frencher*, 503 F.3d 701, 701 (8th Cir. 2007)). The district court did not clearly err.

Next, Rose challenges the drug dog sniff by arguing there was no valid reason for calling the canine unit. However, "as long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful." *United States v. Fuehrer*, 844 F.3d 767, 773 (8th Cir. 2016). What matters is whether officers prolonged the stop "beyond the time needed to complete the purpose of the stop." *United States v. Rutledge*, 61 F.4th 597, 602 (8th Cir. 2023).

Here, the stop was not unreasonably prolonged by the dog sniff. Detective Winter's body camera video starts at 1:48:41 p.m. when he began directing Rose to get back in his vehicle. Within approximately ten minutes of the initial stop, the drug dog arrived and alerted. During this time, Winter was communicating with

dispatch about issues regarding Rose's driving eligibility, running his information, and typing up citations. When Officer Roling informed him that the dog had alerted for drugs, Winter had not yet printed out Rose's citations and there is no evidence Winter delayed printing the citations to facilitate the dog sniff. Rose's stop was not, therefore, unreasonably prolonged because Winter was still carrying out the traffic-related purposes of the stop when the dog alerted. *See Rutledge*, 61 F.4th at 602–03.

Rose also challenges the dog sniff's reliability as a basis to challenge probable cause to search his car. The district court considered Rose's arguments and determined the dog was reliable enough to support probable cause. We agree.

Our review of a district court's legal determination of probable cause is de novo. *United States v. Collier*, 116 F.4th 756, 761 (8th Cir. 2024). "A police officer has probable cause to conduct a search when 'the facts available to him would warrant a person of reasonable caution in the belief' that contraband or evidence of a crime is present." *United States v. Gonzalez*, 781 F.3d 422, 429 (8th Cir. 2015) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). "A dog is presumptively reliable at detecting illicit drugs—and its alert establishes probable cause for a search—if the dog has satisfactorily completed a bona fide certification or training program." *Collier*, 116 F.4th at 761. "This presumption may be overcome if a defendant can show, either through cross-examination or introducing his own fact or expert witness, the inadequacy of a certification or training program or that the circumstances surrounding a canine alert undermined the case for probable cause." *Gonzalez*, 781 F.3d at 429.

The record shows, and Rose does not dispute, that the dog and Officer Roling satisfactorily completed bona fide certification programs for narcotics detection. Although Rose questions the reliability of the dog and Officer Roling, in part because they were new to the canine unit, we have upheld probable cause determinations with much newer canine units, including a dog's first field operation. *See United States v. Jackson*, 811 F.3d 1049, 1051–52 (8th Cir. 2016). The dog and

-6-

Officer Roling received their certifications six months before Rose's arrest. In the months leading up to Rose's arrest, they trained monthly for detecting drugs, and the dog deployed in the field without any evidence of a false alert. Rose's expert opined that Officer Roling did not spend enough time each month training the dog, but the district court still found the dog reliable considering the dog's satisfactory performance in a nationally known certification and training program and the lack of evidence showing it had ever falsely alerted. We agree. *See Collier*, 116 F.4th at 761 (explaining that "absent contradictory circumstances, a trained dog's alert will establish probable cause when the dog's previous in-field accuracy rate exceeds 50 percent").

Likewise, the circumstances of the alerts, including the behavior of the dog and handler, do not cause us to doubt that the dog's alerts provided probable cause. "The reliability of a dog's alert, not its manner, is what matters." *Id.* at 761–62. Although it was an excitable dog and Officer Roling shortened his leash before the second alert, Officer Roling testified that the dog alerted twice during the search by sitting. We agree with the district court's conclusion that Rose did not overcome the presumption of probable cause that attaches when a certified and trained dog alerts. *See Gonzalez*, 781 F.3d at 430. Accordingly, considering all the facts surrounding the dog's alerts, we affirm the district court's determination that the officers had probable cause to search the car.

Rose also seeks to suppress statements he made after officers took him into custody. He argues there was no valid *Miranda* waiver because he did not sign anything and a single colloquy in a police car is insufficient. We disagree.

We consider two dimensions when inquiring whether a suspect voluntarily, knowingly, and intelligently waived his *Miranda* rights. *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011). "First, the waiver 'must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "Second, the suspect must have waived his rights 'with a full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting same). This waiver determination is "an extremely fact sensitive analysis." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010). "Circumstances to be considered include the background, experience, and conduct of the accused." *Id.* We review the district court's legal conclusion that the accused "validly waived his *Miranda* rights *de novo* and its factual findings underlying that conclusion for clear error." *Vinton*, 631 F.3d at 483.

Waiver of *Miranda* rights "can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "A voluntary waiver need not assume any particular form; it may be made in writing on a printed format or it may be made orally by replying to questions[.]" *United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976). Here, Rose began speaking to Detective Winter once in the police car. Winter interrupted Rose, read his *Miranda* rights, and asked if he understood them. Rose then conversed with Winter on the way to the police department. About thirty minutes later at the police department Winter asked Rose if he wanted to talk to him, and Rose made incriminating statements. The district court determined Rose "was provided with his Miranda warnings" and that he "knowingly and voluntarily talk[ed] with the officers." The court also found there was nothing "that would indicate his will [was] being overborne or that [he was] being threatened in any way." The district court did not clearly err in making these findings. We have upheld valid waivers despite delays longer than thirty minutes between *Miranda* warnings and later questioning, *Nguyen*, 608 F.3d at 374–75, and Rose fails to point to any evidence suggesting that his statements were involuntary. Further, Rose was thirty-one years old at the time, a high school graduate, and, as his extensive criminal history shows, was experienced with the criminal justice system. *See United States v. Smith*, 21 F.4th 510, 517–18 (8th Cir. 2021) (concluding there was a knowing and intelligent waiver when considering the totality of the circumstances, which included arrestee's background). Rose does not explain how he could have misunderstood or misheard Winter when he was advised of his rights and asked if he understood them. *Cf. United States v. Osorio*, 110 F.4th 1089, 1098–99 (8th Cir. 2024) (noting defendant

"points to nothing in the record demonstrating that the district court clearly erred when concluding that he understood the warnings"). We therefore conclude Rose validly waived his *Miranda* rights. *See United States v. Morgan*, 729 F.3d 1086, 1092 (8th Cir. 2013).

In sum, because the government did not commit any constitutional violations in dealing with Rose, the district court did not err in denying Rose's motion to suppress evidence arising from the traffic stop. Therefore, we need not address Rose's claim that the evidence from the later searches at the jail and his residence should be suppressed as the fruit of an unlawful search. *See United States v. Finley*, 56 F.4th 1159, 1166 (8th Cir. 2023) ("Of course, for there to be 'fruit,' there must first be a 'poisonous tree,' that is, 'an illegal search or seizure' or 'an illegality.'" (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016))).

The final issue for us to decide is whether the district court erred when calculating Rose's Guidelines range by concluding Rose is a career offender, based in part on Rose's prior conviction under Iowa Code § 708.2A(4). The government concedes this issue and agrees the case must be remanded for resentencing because of our decision in *United States v. Daye*, 90 F.4th 941 (8th Cir. 2024).

In *Daye*, we analyzed the career offender enhancement of the Guidelines as applied to a defendant who had two convictions for Domestic Abuse Assault, Enhanced (DAAE) under Iowa Code § 708.2A(3)(b). *Id.* at 943. We declined to decide whether DAAE is divisible for purposes of determining whether it is a crime of violence because the government waived the argument. *Id.* at 944. We then applied the categorical approach to DAAE and determined it was not categorically a crime of violence. *Id.* at 945–46.

At issue here is the nearby subsection, Iowa Code § 708.2A(4), but without adversarial briefing, we decline to determine Rose's career offender classification.[1] *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 148 n.10 (2011) (explaining that in our adversarial system it is "undesirable" to decide a matter without briefing by the parties). We thus remand to the district court to address Rose's career offender status and his sentence in light of *Daye*.[2]

## III. Conclusion

For the foregoing reasons, we affirm the district court's denial of the motion to suppress evidence, reverse as to Rose's sentence, and remand for further proceedings consistent with this opinion.

_____

[1]Though we decline to address this issue, at oral argument the government represented that on resentencing it would not seek to apply the career offender enhancement.

[2]Rose also asks us to analyze his plea proceedings. *See* Fed. R. Crim. P. 11. However, we need not address the issue because we conclude he failed to identify any specific error or argument for reversal regarding the proceedings. *See United States v. Gonzales*, 90 F.3d 1363, 1369–70 (8th Cir. 1996).